TRAVELERS INSURANCE COMPANY V. MINNIE JONES.

Decided March 28, 1903.

1.—Life Insurance—Rescission—Mistake in Policy.

In order to set aside, on the ground of mistake, a completed contract of insurance, evidenced by a policy issued and delivered in accordance with a written application therefor, the mistake must have been mutual, and the party must, upon discovering it, seek relief without delay.

2.—Same—Request to Cancel—Offer Revoked by Death.

Where the insured, in an accident policy which provided that he should leave with his employer each month sufficient funds to meet the premiums thereon, wrote to the insurer claiming a mistake and asking that the policy be canceled, but the insurer nevertheless sent in its claim to such employer for the premiums, this was a rejection of the offer of rescission, and the death of the insured having revoked the offer of rescission, the insurer could not, by virtue of a subsequent withdrawal of its claim for the premiums so made to the employer, acquire the right to accept the offer and cancel the policy.

3.—Same—Estoppel.

Where the employer, after notice by the insurer that it no longer claimed premiums on the policy, sent to the widow of the insured a balance due the insured as wages, her receipt of the money, in the absence of knowledge as to whether the policy had been canceled prior to the insured's death, did not estop her from enforcing the collection of the policy.

Appeal from the District Court of Hunt. Tried below before Hon. H. C. Connor.

*Bomar & Bomar,* for appellant.

*Bennett & Jones* and *Maurice E. Locke,* for appellee.

BOOKHOUT, ASSOCIATE JUSTICE.—This suit was filed in the District Court of Hunt County on the 25th day of July, 1902, by appellee to recover against the Travelers Insurance Company the sum of $2000, the amount of an accident insurance policy issued by said insurance company to W. W. Jones, the husband of plaintiff. A trial resulted in a verdict and judgment for plaintiff, and the defendant company appealed.

*Conclusions of Fact.*—On July 29, 1901, W. W. Jones, who was in the employ of the Missouri, Kansas & Texas Railway Company of Texas as car repairer, executed and delivered to the Travelers Insurance Company, through its special agent, J. J. Farley, a written and printed application for an accident insurance policy in the amount of $2000 in case of accidental death. The application was accepted by said special agent, and, on July 30, 1901, said company, through said agent, in consideration of a premium of $25, executed and delivered to said W. W. Jones its policy of insurance in accordance with said application. By the terms of the policy the premium was to be paid in separate consecutive periods of two, two, three and five months, in the sum of $6.25 for each payment, each to only apply to its corresponding insurance

period, and further, said Jones was to leave in the hands of the paymaster of the said railway company sufficient funds earned in the preceding month to pay said installments of premium, and it was provided that in case the assured should fail to leave in the hands of the paymaster any of the premium as it should fall due, the policy should be void in the case of the premium for the first period, and in case of the premium for any later period, the policy should terminate with the period for which the next preceding premium should have been paid. After receiving the policy on July 30, 1901, Jones wrote a letter and sent same, with the policy inclosed, by mail to John L. Way, defendant's State agent for Texas at St. Louis, Mo., in which letter he stated that it would be impossible for him to pay the premium stipulated in the policy, and for this reason he returned the policy and requested said agent to cancel the application therefor. On the same day he wrote and mailed a letter to the defendant company at its home office in Hartford, Conn., stating that a policy had been written, but that he found it would be impossible to pay the assessment, and asking the company to cancel the application for insurance. On August 9, 1901, defendant's State agent, John L. Way, wrote to W. W. Jones a letter which was duly received by Jones, in substance, as follows: "Replying to your letter of the 30th ulto., would say that the inclosed accident policy No. 1,148,085 was written for you on July 30th, and was placed in full force and effect on that date. It is therefore too late for me to interfere in the arrangement made at that time, and I trust that you will be able to meet the payments of the premium as they become due. The insurance was issued in the best of faith, and the company expects to do its part in every particular. The contract is a most liberal one, and you are permitted to pay for the protection which it affords in installments, thereby making it most convenient for you. The contract is identical with that carried by a great number of men engaged in the same occupation that you are, and I have heard no complaints from any source." In this letter he returned the policy to Jones. On August 12, 1901, Jones replied:

"Mr. Jno. L. Way, St. Louis, Mo.: Sir.—Yours of the 9th to hand and will state that if your terms are as your agent stated, I am willing to keep up the policy No. 1,148,085. He told me that it would cost me $6.25 per quarter, that is $6.25 for August, September and October. Now if this statement be correct, I am willing to comply with my part of the contract. But after he had left one of the men informed me that it was $6.25 per month. Now if this be the case, I positively will not pay it at all. As I have talked to some of the best attorneys in this place and find out from them that I am only bound to the contract as I understood it, and I have witnesses to prove that quarterly was the space of time mentioned all the way through, but I find now after you have returned the policy, Sept. 20, $6.25; Oct. 20, $6.25; Nov. 20, $6.25; Dec. 20, $6.25, written on the sealing part of the envelope. Now, Mr. Way, I propose to be a gentleman in every respect and pay all

honest debts, but positively refuse to pay $6.25 per month; for the
money I am laboring for now is really not mine, as I owed it long
before I heard of your robbing business, and expect for my money to
go for honest debts. I wrote the insurance company at Hartford the
same time I wrote you. I will return the policy again, and if you make
your agent's word good I will make mine good to pay $6.25 for August,
September and October, and in case such thing be the case you may
return the policy, otherwise you may burn it, for I have no use whatever
for it. There is no law in this Union to force a laboring man to give
up his hard earnings to any such business as you represent. Hoping
you will burn the policy and say nothing more about it, I am, yours
for business, W. W. Jones."

At the end of this letter was the following statement: "Mr. Jno. L.
Way: This is to certify that I heard the agreement between your agent
and Mr. Jones, that he was to pay $6.25 per quarter. (Signed)   R.
Walter Anderson." This letter with the policy was received in due
course of mail at St. Louis, Mo., by defendant's State agent. After its
receipt, and on or about August 20, 1901, said State agent sent to the
auditor of the Missouri, Kansas & Texas Railway Company of Texas at
Dallas, Texas, his "deduction list," showing the amounts which the
paymaster of the railway company was requested to deduct from the
wages of the railway company's employes for that month to pay the
defendant for premiums in pursuance of orders received from such
employes. Jones' wages for the month of August were payable by the
railway company on September 20, 1901, according to the custom of
the company. The insurance company, among other deductions, re-
quested said railway company to deduct the sum of $6.25 from the
August wages of W. W. Jones and pay the same to it as a premium on
policy No. 1,148,085, being the policy sued on.

On August 24, 1901, after being informed of the death of W. W.
Jones, said State agent telegraphed said railway company requesting
it to return said order, which was done by the railway company. On
August 17, 1901, W. W. Jones, while pursuing his occupation of car
repairer, met with an accident and sustained injuries while working
underneath a standing car. Such injuries were caused by one of de-
fendant's trains being propelled against the car under which Jones was
working, causing the same to run over him, crushing and mangling him,
from which injuries he immediately died. His injuries were external,
violent and accidental, and not intended by said Jones or the persons
operating and directing said train, and, independent of all other causes,
produced the death of said Jones.

*Conclusions of Law.*—The execution and delivery of the policy by the
insurance company in accordance with the written application evidence
a completed transaction and constitute a contract between the parties.
In order to have the contract set aside on the ground of mistake, the
mistake must have been mutual, and the party must seek relief without

delay upon discovering it. When W. W. Jones wrote the letter of July 30, 1901, he did not claim that there was any mistake in the face of the policy relating to the time of payment of the premiums. No complaint was made by him prior to the letter of August 12, 1901. By the terms of that letter Jones seems to have been under the impression that the policy required the payment of $6.25 per month premium. He admits that he was to make four payments of $6.25 each. The policy did not require him to pay $6.25 each month the same was in force. It did require him to pay $6.25 in four payments, each in two, two, three and five months. It is not believed that had Jones' contention been true, and had there been a mistake in the policy in not making the payments become due quarterly, that such mistake, in the absence of fraud, would have entitled him to a rescission of the contract. The mistake was not mutual. Grymes v. Sanders, 93 U. S., 55; 2 Pom. Eq., sec. 856.

There was no mistake on the part of the insurance company. The policy was in accordance with the application. There was no pleading on the part of either party alleging fraud in the making of the contract, and no fraud is shown by the record. It is true that the company could have, had it so desired, accepted the terms offered by Mr. Jones in his letter of August 12th, and canceled the contract, but it did not do so. After the receipt of the letter it sent to the auditor of the railway company for which Jones was working an order on that company for the purpose of having it paid as the first installment of premium of $6.25 out of Jones' wages for that month. This action was in accordance with the terms of the policy. In so doing the company rejected the offer of Jones to rescind the contract. Jones died on August 17, 1901, which revoked all offers of cancellation made by him and which the company had not accepted prior to his death. When Jones died the insurance company was insisting on the validity of the contract. The policy not having been canceled during the lifetime of Jones, upon his death the rights of the appellee, as beneficiary thereunder, became absolute, and were not affected by the action of the insurance company in wiring the paymaster of the railway company on August 24th to return to it the order for $6.25, and its return by the railway company. McAllister v. Mut. Life Ins. Co., 101 Mass., 558; Porter v. Mutual Life Ins. Co., 70 Vt., 504, 41 Atl. Rep., 970; Shields v. Equitable Life Assurance Soc., 121 Mich., 690, 80 N. W. Rep., 793; New York Life Ins. Co. v. Miller, 11 Texas Civ. App., 536, 32 S. W. Rep., 550.

Nor did the fact that Mrs. Jones, thereafter, on September 11, 1901, received from the railway company $24.50, the amount of the wages earned by W. W. Jones in the month of August and standing to his credit on the books of the company, amount to a ratification by her of the cancellation of the policy, or estop her from enforcing collection of the same. Prior to that time defendant's agent had recalled its order from the railway company, and had, in his letters of September 9th and September 11th, respectively, denied that the policy was in force. The record does not show that the plaintiff knew that defendant's agent had

not accepted the offer made in Mr. Jones' letter of August 12th, and canceled the policy, or that she knew that defendant company had sent its order to the paymaster of the railway company for the payment of the first installment of premium·out of the wages of her husband for the month of August. The company, having denied that the policy was in force, and having withdrawn its order from the railway company, could not complain of the action of Mrs. Jones in receiving from said railway company said wages.

Upon the death of Jones the company became indebted to the appellee for the face of the policy, and it had authority to collect the premium due from that sum. The plaintiff sued to recover the amount of the policy less $6.25, the amount then due for premium. The judgment was for this sum, with interest, attorney's fees, etc.

The appellant having failed to point out any reversible error, the judgment is affirmed.

*Affirmed.*

Writ of error refused.