BRINK *et al* v. MERCHANT'S & FARMERS' UNITED MUT. INS.
ASS'N OF SOUTH DAKOTA.

1.  In an action against an insurance company, where plaintiff alleged that
the acceptance of premium and application by the company's agent con-
stituted an insurance contract, the burden was on plaintiff to show that
it was understood at the time of signing the application that the risk
was to begin on that day.

2.  Unreasonable delay of an insurance company in acting on an application
for insurance does not amount to acceptance.

Opinion filed July 1, 1903.

Appeal from circuit court, Clark county.  Hon. JULIAN
BENNETT, Judge.

Action by George A. Brink and another against the Mer-
chants' & Farmers' United Mutual Insurance Association of
South Dakota.  From a judgment for plaintiffs, defendant ap-
peals.  Reversed.

*Thomas Sterling*, for appellant.

*S. A. Keenan*, for respondents.

HANEY, P. J.   In this action the plaintiffs seek to estab-
lish the existence of a contract of insurance, and to recover
thereon the value of certain property destroyed by fire.  The
following outline of undisputed facts will indicate the nature
of the controversy:   On September 14, 1899, the defendant be-
ing an insurance corporation created by and existing under the
laws of this state, and the plaintiffs being the owners and in
possession of a certain threshing machine and attachments, an
agent of the defendant obtained an application for insurance
on the threshing outfit against fire and explosion, signed by
the plaintiff George A. Brink, which contained the following

clauses: "Insurance to run for ——— from 12 o'clock noon of the ——— day of· ———. Permission to be given to use said threshing outfit for threshing purposes in the state of S. D. The above property mortgaged to——— of———, and the loss, if any, under any policy that may be issued on this application, is to be made payable to said mortgagee as the said mortgagee's interest may appear, subject to all the conditions and provisions of said policy. It is understood that this company shall not be liable for more than three-quarters of the actual cash value of the property herein insured at the time of the loss. It is also understood that this company shall not be liable until policy is issued and accepted by insured." At the same time the agent received from the plaintiffs, as premium, an assessment note for $10, and an order for $12. The latter was converted into cash which, with the note and application was delivered to the company not later than October 1, 1899. No policy was ever written. Some time between October 15 and November 5, 1899, the threshing outfit was destroyed by fire. On November 5, 1899, the defendant, in a letter replying to a telephone message giving notice of the loss, denied all liability, except to return the premium received. Subsequently the note and cash received as premium were returned, but not accepted by the plaintiffs, and this action was instituted, resulting in a judgment in favor of the plaintiffs for $400, with interest from November 1, 1899. From such judgment, and an order denying its application for a new trial, the defendant appealed.

The contention that the judgment should be sustained on the theory that a contract of insurance was entered into when the application and premium were received by the agent is clearly untenable. Should it be assumed that the agent was

authorized to make such a contract, and that the plaintiffs are not bound by the express terms of the written application (two propositions involving serious difficulty), still the burden would be on the plaintiffs to show by a fair preponderance of the evidence that it was understood and agreed between the agent and the plaintiff who signed the application that the risk was to begin on that day; and, taking the view most favorable to the plaintiffs, whether or not such was their understanding and agreement was a question of fact for the jury, which was not submitted, and therefore not determined by their verdict. It is fair to infer from the failure of the learned circuit court to submit such issue that it concluded there was not sufficient evidence to support a finding thereon in favor of the plaintiffs, and such inference is further justified by the absence of any evidence in the record tending to prove that the agent represented that the insurance would be immediately effected.

The next question to be considered is the effect of defendant's delay in acting upon the plaintiff's application. On this subject the following instruction was given, to which proper exceptions were preserved: "Should you further find that this application for insurance was regularly made by the plaintiffs, and that the premium for the same was paid, and that this application was duly received by the company, but was laid aside, unanswered and unopened, for such a length of time as would have permitted or allowed the company, by the exercise of reasonable diligence, to have passed upon it, and either accepted or rejected it; you will then consider the case the same as if the policy had been issued by the company." It should be observed that this is an action against the insurance company itself, and that plaintiff's right to recover must rest on a

contract of insurance. It is not, as were the cases of Lindsay v. Pettigrew, 5 S. D. 500, 59 N. W. 726, and Minneapolis Threshing Machine Co. v. Darnall, 13 S. D. 279, 83 N. W. 266, an action for damages resulting from the failure to procure insurance by one who had agreed to do so. A contract of insurance is not complete without a meeting of the minds of the parties in respect to the following particulars: The sum to be insured, the time when the insurance is to begin and terminate, the subject to be insured, and the consideration. Ostrander on Insurance, § 33. If there was no meeting of the minds of the parties in respect to the essential elements of a contract of insurance when the application and premium were received by :he agent, such a contract never existed, unless the conduct of the defendant shall be construed as an acceptance of the application. It may be assumed, as the jury found, that the delay in accepting or rejecting the application was unreasonable, but it would certainly be illogical to assert that the failure of the defendant to either accept or reject the plaintiff's application for any length of time constituted an acceptance of, and consent to, the terms proposed by the plaintiffs. There was no contract, simply because there never was any acceptance of the application on the part of the defendant. Our attention has been called to no decision wherein mere delay in acting upon an application for insurance is construed as equivalent to an acceptance. Contracts are not created without consent. Failure of the defendant to manifest its approval of the plaintiff's application within a reasonable time should, we think, be regarded as evidence of its rejection, rather than of its acceptance. In a case where the application contained the stipulation "that this policy shall not be in force until it has been signed by the

officers of the association and delivered to the applicant," Mr. Justice Brewer alludes to the effect of delay in acting upon such an application in the following language: "The plaintiff, however, insists that there was delay—culpable delay—on the part of the insurance company in acting upon the application. The application and examination were completed, as I stated, on December 4th. For some reason, the application did not reach New York City until December 18th. Concede that there was unreasonable delay, and yet I do not see how any delay makes a contract, in the face of the stipulation. If the applicant was dissatisfied, and the delay unreasonable, he could have recovered the money which he had paid. While receipt of the application may cast a moral duty upon the company to act promptly, yet delay does not operate in the same way as an acceptance of the application. Suppose the company had delayed acting for a year; could it be claimed that the policy was in force? The proposition which the applicant made was for a policy to become operative when the instrument was executed and delivered. No negligence, no delay, reasonable or unreasonable, on the part of the insurance company, could make a contract in face of the stipulation." Misselhorn v. Life Association (C. C.) 30 Fed. 545. If no contract was made by the agent, subsequent action on the part of the company was certainly necessary to create a contract, and as mere failure to act, for even an unreasonable length of time, did not constitute an acceptance of the plaintiff's application for insurance, we think the charge of the circuit court was erroneous; and as the plaintiff's right to recover, under its instructions, rested alone upon the fact of defendant's unreasonable delay, the verdict in their favor cannot be sustained.

The judgment is reversed, and a new trial ordered.