J. F. WATERS, admr., and C. L. EPLEY v. SECURITY LIFE AND ANNUITY COMPANY.

(Filed 22 May, 1907).

1. Insurance—Contract—Evidence—Nonsuit.—It is error in the court below to dismiss an action upon a contract of insurance as on judgment of nonsuit under the Hinsdale Act upon the evidence, when there is testimony tending to prove that there was a complete and definite contract of insurance between the intestate and defendant company as contained in the policy, and no evidence tending to show that the contract was ever modified or rescinded.

2. Same—Policy Delivered.—When a policy of insurance which complies with the application has been unconditionally delivered, in the absence of fraud it is conclusive evidence that the contract exists between the parties.

3. Same—Acceptance.—Acceptance by the insurance company of the applicant need not necessarily be evidenced by physical possession by the insured of the policy, as delivery is largely a question of intent, frequently indicated by mailing a letter in due course containing an unconditional acceptance, or by sending the policy to an agent with instructions for unconditional delivery, where there is no contravening stipulation in the contract itself.

4. Same—Evidence—Declarations—Questions for Jury.—The physical delivery by the company of the policy of insurance to the applicant thereof makes out a *prima facie* case that there is a

completed contract of insurance as contained in the policy; but the effect of such physical delivery can be qualified and explained, and, on issue properly joined, pertinent declarations of plaintiff's intestate made at the time, or afterwards, when against the interest of declarant, may be relevant as testimony on the question.

5. Same—Policy Forms—Alterations—Judicial Notice.—The Court takes judicial notice that policies of insurance are gotten up on printed forms designed to meet the average and general demand in contracts of this nature, and frequently changes are made to meet special conditions; in the absence of special circumstances tending to cast suspicion thereupon, entries by marginal notes and "pasters" on the policy raises no presumption of alteration, but the nature of the entry and its placing are simply circumstances on the general question for the jury as to a completed contract.

6. Same—Cancellation—Mutual Consent.—While a contract of insurance may be set aside by mutual consent upon a sufficient consideration, until such is effected it remains binding. If the insured, acting under an erroneous impression that the policy was not such as he had agreed to take, returned it and said he would not pay his notes given therefor, and the company did not accept the proposition unconditionally, such conduct was nothing more than a proposal to cancel, and upon the death of the insured before acceptance the negotiation was off and the contract of insurance remained effective.

CIVIL ACTION on a policy of insurance, tried before *Cooke, J.,* and a jury, at December Term, 1906, Superior Court of BURKE County.

The defendants contended that:

1. No policy of insurance of defendant company had ever existed in favor of plaintiff's intestate.

2. If any such policy had ever existed, the same had been canceled by mutual consent and was not in force at the time of intestate's death.

At the close of plaintiff's evidence, and again at the close of the entire evidence, there was a motion by defendant to dismiss the action as on judgment of nonsuit. The latter motion was allowed, and plaintiff excepted and appealed.

*S. J. Ervin* for plaintiff.
*Avery & Avery* for defendant.

HOKE, J.   There was evidence offered on the trial tending to show that in February, 1906, plaintiff's intestate, a livery-man doing business in Morganton, N. C., made written application for a policy of insurance of a specified kind in defendant company, passed a satisfactory physical examination and executed two notes as payment on premiums, each for $107.30, and payable, respectively, one 1 November, 1906, and the second 1 March, 1907.   The application, endorsed and approved by the company's agent, was forwarded to the company and a policy was immediately issued, returned to defendant's agent at Morganton and there delivered to the intestate.   The kind of policy desired is thus stated in the application:

"(Margin:)  Accepted; E. R. Michaux.

"Date policy, 25 February, 1907; term insurance.

"I hereby apply to the Security Life and Annuity Company, Greensboro, N. C., for insurance upon my life, and agree that this application shall be the basis and a part of the proposed contract for insurance.

"Premiums, $170.10.    Term, $44.50."

A part of this description, to-wit, "Date of policy, 25 February, 1907; term insurance," was written on the margin, and perhaps some other portions of the statement. The policy insured Charles L. Epley, the applicant in defendant company, in the sum of $5,000, and on the face of the policy was pasted a slip, termed a paster, as follows:

"Whereas, Policy No. 4415, for $5,000, has been issued by the Security Life and Annuity Company, of Greensboro, N. C., upon the life of Charles Lee Epley (hereinafter called the insured), of Morganton, N. C., to take effect on 25 February, 1907, provided payment of the first premium specified

therein shall have been made upon delivery of this agreement; and

"Whereas, the insured desires temporary insurance for the same amount during the period intervening between 25 February, 1906, and 25 February, 1907:

"Now, therefore, the company agrees that upon delivery of policy No. 4415 and of this agreement, and payment at the date of such delivery of the premium of forty-four and 50-100 dollars, receipt of which amount is hereby acknowledged, in consideration of this agreement, and provided that insured shall die, or in event of total and permanent disability before 25 February, 1907, it will admit the same liability which would exist if said Policy No. 4415 were in force at the time of such death or disability."

And at or near the close of the policy is a stipulation to the effect that no premiums thereon shall be required after 25 February, 1920.

Shortly after the delivery of the policy, intestate was heard to complain, by several persons examined as witnesses, that the policy was not the kind he had applied for, and that he believed he would send it back. To one he stated, in substance, that it required sixteen payments instead of fifteen; to another, that it was dated a year forward and the rate was higher; and to yet another, that he had applied for a straight policy and they had sent him a term policy, etc., and soon thereafter he returned the policy to the company, accompanied by a letter, as follows:

"MORGANTON, N. C., 27 February, 1906.

"THE SECURITY LIFE AND ANNUITY COMPANY,

"*Greensboro, N. C.*

"DEAR SIRS:—I am to-day returning the policy you sent me, which is not the one I bought, and I do not propose to accept it. My policy was to correspond with the date of the

WATERS *v.* ANNUITY CO.

application, and the one sent me is dated for 1907, and, of course, I will not accept it. I still have the receipt Mr. Yates gave me, and will keep it until I get the policy I bought or my notes, one. I will protest these notes if policy does not come according to contract.

"Respectfully,

"C. L. EPLEY."

The officers of the company, in reply, wrote several letters to him, as follows:

"2 MARCH, 1906.

"MR. C. L. EPLEY, *Morganton, N. C.*

"MY DEAR SIR:—Your letter, with Policy No. 4415, issued in accordance with your application, just received, and I note what you say in regard to same. The policy is all right as it is. However, if you prefer it different, of course we shall be glad to change it for you. I am referring the letter to our Mr. Yates, who will take it up with you, and I am sure will make it satisfactory to you.

"With best wishes, I am,

"Yours truly,

"GEORGE A. GRIMSLEY, *Secretary.*"

The plaintiff next offered the following letter:

"2 MARCH, 1906.

"MR. P. P. YATES, *Asheville, N. C.*

"DEAR SIR:—I am sending you the policy of Charles L. Epley and his letter in regard to same. I think it best for you to go right down to see him. I am writing him that the matter has been referred to you, and that you will take it up with him.

"Sorry I did not get to see you before you left town. Hope you will have the biggest business during March you ever had.

"Yours truly,

"GEORGE A. GRIMSLEY, *Secretary.*"

Plaintiff next offers letter from Mr. P. P. Yates, general agent of the defendant company, dated:

"ST. LOUIS, Mo., 7 March, 1906.

"C. L. EPLEY, *Morganton, N. C.*

"DEAR SIR:—I have just received a letter from our secretary, Mr. Grimsley, telling me that you did not understand your policy and had sent it back. Now, I, of course, know that you did this simply because you did not understand it, and I would not want you to have it unless it is in every particular· just what I sold you, and it shall come up to that standard in every way; but I will soon be in Morganton again, and as there never was so nice a policy put on paper before, I am sure I can make it all right with you.

"With best wishes, I am,

"Yours truly,

"PETER P. YATES."

Speaking to this matter of returning the policy, J. L. Jarvis, a witness for defendant, testified:

"Q. Did he ask you anything about returning the policy?

"A. Yes; he wanted Mr. Johnston (another agent) and myself to take the policy. We refused to do it, and then I said to him, 'You can take it up through Mr. Yates.' I gave him his address. Cannot say whether he told me in so many words whether he would return it or not."

While the matter remained in the condition indicated by these letters and testimony, the intestate was accidentally drowned, by reason of high water in driving across country, in the line of his occupation; and, at the time of his death, both the policy and the notes given by plaintiff on the premium were in possession of the company. The policy, or a copy of it, was furnished plaintiff in response to notice, and the notes were produced at the trial by order of the Court made in the cause.

The two notes for $107.30 each equal $214.60, being
 the equivalent of the term insurance for year 1906.  $44.50
Premium due February 25, 1907................ 170.10
                 $214.60

By correct interpretation, there is evidence here tending to prove that there was a complete and definite contract of insurance between the intestate and defendant company as contained in the policy, and if this should be established there is nothing in the testimony as it now appears which shows or tends to show that such a contract was ever modified or rescinded. It is a recognized principle of the law of contract, applied by well-considered decisions to contracts of insurance, that where there has been formal application made for a specified kind of insurance, all the required preliminaries having been complied with, and such application has been unconditionally accepted and the acceptance signified by some definite act of the company, that the contract of insurance is then complete and will bind the parties according to its terms. *Crook v. Cowan,* 64 N. C., 743; *Borden v. Railroad,* 113 N. C., 570; *Eames v. Insurance Co.,* 94 U. S., 299; *Insurance Co. v. Hallack,* 27 N. J. L., 645; *Heiman v. Insurance Co.,* 17 Minn., 153; Vance on Insurance, 160; Bliss on Insurance, 210-215.

It is not required at all that the acceptance by the company should be indicated by a manual delivery of the policy to the insured; for, as said in some of the cases cited, "It is not the physical possession of the policy, but the legal right thereto which is determinative of the question." Accordingly, a binding acceptance can be, and frequently is, indicated by the mailing of a letter in due course containing an unconditional acceptance, or by sending a policy to an agent with instructions for unconditional delivery, where there is no contravening stipulation in the contract itself. *Insurance*

*Co. v. McArthur,* 118 Ala., 659; *Insurance Co. v. Babcock,* 104 Ga., 67; reported, also, in 69 Amer. St. Reports, 134, with a very instructive and satisfactory note on the subject by the editors; Joyce on Insurance, sec. 91, pp. 92, 93. And where a policy which complies with the application has been unconditionally delivered, in the absence of fraud it is held to be conclusive evidence that the contract of insurance exists between the parties. *Rayburn v. Casualty Co.,* 138 N. C., 379; *Grier v. Insurance Co.,* 132 N. C., 542; *Travelling Insurance Co. v. Jones,* Civil App. (Texas), reported in S. W., 978. It may be noted, as postulates of this last proposition, (1) that the policy complies with the application; (2) that the delivery is unconditional.

The fact that the policy in a given case has been turned over to the insured is not conclusive on the question of delivery. This matter of delivery is largely one of intent, and the physical act of turning over the policy is open to explanation by parol evidence. It does, however, make out a *prima facie* case that there is a completed contract of insurance as contained in the policy. Vance on Insurance, 169; Joyce on Insurance, sec. 94.

In the case before us, considering the policy with the paster or rider in connection with the application—and it is right so to consider them (*Insurance Co. v. Bussel,* Ark., reported in 86 S. W., 814)—it appears on the face of the papers that, while the intestate seems to have had a different impression, as a matter of fact the policy complied with the application. It did not require, as he erroneously supposed, sixteen instead of fifteen payments; and both as to containing, in part, term insurance, and in the amount of the premium, the application and the policy were in accord.

If, then, this application was the one which intestate really made, and the policy complying with it was unconditionally delivered, in such case the minds of the parties had met on

one and the same thing at the same time, and the contract of insurance was complete. If, however, as defendant contends, the agent, without the knowledge or consent of the intestate, had changed the application, then the policy which was sent him in accordance with an application so wrongfully changed would not be the contract until the applicant had been given reasonable time to consider and had signified his assent to the proposition as amended. And if, in the exercise of that right, he returned the policy, in such case the negotiation would have ended without a contract. Or, if the policy did accord with the application as made by the intestate, and the delivery which was actually made was not unconditional, but on approval, this would leave the matter in the tentative; and if the intestate, in such case, exercising the privilege given him by the terms of the delivery, returned the policy, in that case there would be no binding agreement and plaintiff could not recover. It is a question for the jury as to whether there was a valid and binding contract of insurance between the parties; and the declarations of the intestate would seem to be relevant on that issue in so far as they tended to show that the application had been changed without his knowledge, and as to whether the delivery was unconditional or qualified.

It is urged upon our attention that some of the entries, by means of which the application was made to accord with the policy and the paster, were made on the margin of the application and written longitudinally, and that such entries, so made, and even the paster itself, are presumptive evidence of a change in the contract after the application had been first signed. But neither the authorities nor the known usage in the making of such contracts are in support of the position to the extent contended for. We know that these policies, as well as the applications, are gotten up on printed forms designed to meet the average and general demand in contracts

of this nature, and frequently changes are made to meet special circumstances; that these are ordinarily noted on the margin, and a slip is then pasted on the face of the policy to express the contract as affected by these changes. In the absence, therefore, of some special circumstances tending to cast suspicion on such entries, there should be no presumption of any alteration; but the nature of the entry and its placing are simply circumstances on the general question as to whether there has been a completed contract of insurance. And so it is held by authority: *Pierce v. Insurance Co.*, 138 Mass., 161; *Patch v. Insurance Co.*, 44 Vt., 481; *McLaughlin v. Insurance Co.*, 57 Me., 170; Joyce on Insurance, sec. 195. The question, then, should be submitted to the jury, and if a binding contract of insurance should be established as contained in the policy, we see nothing in the correspondence or conduct of the parties which tends to show that such contract had ever been canceled by mutual consent, as alleged by defendant company. Contending that the policy was sent in strict accordance with the contract, they offer to take it up with the intestate and to make it right with him if it does not so accord; but not once do they assent to the proposition that there is no longer a contract of insurance. Moreover, they held on to the intestate's notes, and have never said or written anything which would prevent their collection in case the policy could be shown to comply with the application as made by the intestate, and that the delivery was absolute. A contract of insurance may be set aside by mutual consent, the consent of one of the parties being respectively the consideration for the consent of the other. But where, as here, this is the sole consideration claimed, in order to make a binding agreement there is required the essential element in the law of this and all other contracts—that of mutuality. As said by Clark, in his work on Contracts, speaking of mutual promises, the one being in consideration of the other (page

117) : "The promises may be contingent or conditional, except that mutuality of engagement is necessary; and if the condition or contingency produces a want of mutuality, the consideration is insufficient; both parties must be bound, or neither is bound."

If, therefore, the intestate, acting under an erroneous impression, sent the contract back to the company with the statement that it was not the policy he ordered and he did not intend to pay the notes, the company could have made this proposition a binding contract by an unconditional acceptance, signified in some definite manner; but until they did this the act of the intestate in sending back the policy was nothing more than a proposal to cancel; and if he died before acceptance the negotiation was off and the contract of insurance remained. *Insurance Co. v. Jones, supra; Sitterding v. Grizzard & Gaskins,* 114 N. C., 108; *Fertilizer Co. v. Moore,* 118 N. C., 191; *Bank v. Hall,* 101 U. S., 43.

*Travellers Co. v. Jones* is very similar to the case we are discussing, and is an apt authority on the different points presented. In that case it was held, among other things: "1. The execution and delivery of a policy to an insurance company in accordance with a written application evidences a completed transaction and constitutes a contract between the parties. 2. Death of insured revokes all offers of cancellation made by him prior to his death and not accepted by insurer prior thereto. 3. Where an insurance company, in pursuance to the terms of a policy, sent in its claim for a premium to insured's employer, and, before its payment, insured, who had requested a cancellation, died, the rights of the parties having then become fixed, the insurance company could not alter them and accept insured's offer of cancellation by withdrawing its claim on his wages." And in *Sitterding v. Grizzard,* 114 N. C., it is held: "Where one party to a contract relies upon a renunciation of it by the other,

the burden is on him to show, by positive and unequivocal proof, not only that the other party abandoned the contract, but that he himself accepted the renunciation."

The question of whether there had ever been a valid contract of insurance between the intestate and company of the kind contained in the policy will be considered and determined on the principles heretofore indicated; and if such a contract is established, then the act of the intestate in sending the policy back to the company amounts to no more than a proposition by him to cancel, and, not having been accepted by the company, from anything that now appears, the death of the intestate, under such circumstances, puts an end to the negotiation and would leave the policy in force.

There was error in dismissing the action, and the order to that effect will be set aside and the cause proceeded with in accordance with this opinion.

Reversed.