MRS. SADIE RICHMOND *v.* TRAVELERS' INSURANCE COM-
PANY.

(*Jackson.*    April Term, 1910.)

1. ACCIDENT INSURANCE. Proposition for renewal is not ac-
cepted by the insurer's failure to reject it for sixteen days.

A proposition made by an accident insurance company to renew
an existing policy made without the insured's application for
a renewal, sent to the insured in a letter inclosing a renewal
receipt for the premium, dated two days before the expiration
of the policy, cannot be held to have been accepted by the
insured, because he failed to return the receipt for cancellation
or expressly to reject the proposition for sixteen days, and
until fourteen days after the policy of insurance expired.

Cases cited and distinguished: Adams v. Eidam, 42 Minn., 53;
Insurance Co. v. Jones, 3 Tex. Civ. App., 146; Waters v. Life
& Annuity Co., 144 N. C., 663.

2. SAME. Application for isurance or proposition for modification
of policy is not accepted by mere inaction, except for injury
operating as an estoppel, when.

An application for insurance, even though accompanied by a
premium, will not be treated as accepted, merely because the
insurance company delays action thereon for months, but
delay may bind the insurance company where the applicant
has been misled into believing that the application would be
accepted, and, relying thereon, has refrained from obtaining
other insurance. The same rule applies to the insurer's
proposition to the insured for a modification of the policy.
(*Post, pp.* 314, 315.)

Case cited and approved: Shakman v. U. S. Credit System Co.,
92 Wis., 366.

3. SAME. Mistaken view of law upon given facts entertained by insured and agent of insurer will not make a contract without mutual assent.

The fact that the agent of the insurer entertained the mistaken view of law that the policy was in force, pending the agent's renewal proposition of September the 2d, until he received the insured's reply of September 18th, and that the insured entertained the same mistaken view, and supposed that he would be held on the premium unless released by the insurer, did not change the rule of law that there can be no contract without mutual assent, and did not, in law, substitute for the ineffectiveness of that delay the opinions of these persons, or add to that delay an efficiency which the law did not attach to it. (*Post, p. 315.*)

4. SAME. Insured's attempt to cancel policy for his misconception of the completed contract is ineffective before the insurer's acceptance; and policy is in force pending the negotiations.

Where the insured mistakenly or erroneously supposed that his policy of insurance was not in accordance with the completed contract of insurance, and, upon the receipt of the policy, returned the same to the insurer, or wrote to the insurer that he would not accept it, stating his alleged misconception of the contract, such action of the insured amounted to nothing more than a proposition to cancel or modify the policy, and, until the insurer accepted such proposition, the policy remained in force, and if the insured died pending the negotiations for such cancellation or modification of the policy, the insurer was bound and liable upon the policy as still in force. (*Post, pp.* 315-317.)

Cases cited and approved: Insurance Co. v. Jones, 32 Tex. Civ. App., 146; Waters v. Life & Annuity Co., 144 N. C., 663.

5. SAME. Insurer's proposition of renewal not acted upon by the insured until sixteen days does not amount to an acceptance; case in judgment.

Richmond v. Insurance Co.

The agent of an accident insurer sent to a policy holder a renewal receipt, continuing the policy in force, and also sent a letter stating that the renewal receipt renewed the policy for a specified time, and asking for the payment of the premium. The policy holder delayed answering for sixteen days, when he wrote, inclosing the receipt and discontinuing the policy. On receipt of this letter, the agent wrote a letter urging the policy holder to continue the policy in force, and stating that the renewal receipt would be held in the office till hearing from the insured. The latter letter was misdirected, and never reached the policy holder, who was killed before its arrival. The agent and the holder believed that the policy was in force pending the offer contained in the first letter off the agent until he received the holder's letter, and the holder supposed that he would be held on the premium unless released by insurer. Upon these facts, the court held that the policy was not renewed or continued in force, and that there could be no recovery thereon for the death of the insured covered by the policy.

FROM SHELBY.

Appeal from the Chancery Court of Shelby County.

F. H. HEISKEL, Chancellor.

McKELLAR & KEYSER, for complainant.

TURLEY & TURLEY, for defendant.

MR. JUSTICE NEIL delivered the opinion of the Court. After a very careful examination of this case we find

ourselves unable to concur in the result reached by the learned chancellor. The letter of September 2d, written by the agents, Marx & Bensdorf, containing the renewal receipt, simply amounted to an offer on the part of the company to renew the insurance for the ensuing six months. This was, of course, open to the acceptance or rejection of George Richmond, the subject of the insurance. On the 18th of the same month he mailed a reply to the agents, in which he rejected the offer and returned the renewal receipt. On the next day, September 19th, the agents wrote George Richmond another letter, in which they renewed the offer and urged him to accept it. He however, never received this last letter, but was killed on the 22nd of the same month.

We think on this state of facts there could be no doubt whatever as to the true legal result.

A different construction, however, is sought by the complainant to be placed upon this correspondence, based upon two or three considerations; the first being the language of the letters themselves, the second resting on the evidence to the fact that George Richmond thought himself bound by his failure to reply for so long, and the third resting on the delay itself, as an inference of acceptance.

The correspondence was as follows:

"Sept. 2, 1908.

"Mr. George Richmond, City.

"Dear Sir: We take pleasure in inclosing herewith renewal receipt No. A 995,695, renewing your accident

policy, or 1,474,327, for six months from the 4th inst. Premium on same is $15.00, for which you can send us check at your convenience.

"Thanking you for your business, and soliciting your further favors, we are

"Yours very truly,

"Marx & Bensdorf, District Managers."

The inclosed receipt was as follows:

"Series A.                                    No. 995,693.

"The Travelers' Insurance Company,
of Hartford, Conn.

"Received of George Richmond premium of $15.00, continuing in force policy No. O O 1,474,327 from the 4th day of September, 1908, to the 4th day of March, 1909, at noon, subject to all the conditions in original policy. Not valid unless countersigned by a duly authorized agent or cashier of the company.

"B. A. Page, Secretary.

"Countersigned at Memphis, Tenn.

"Marx & Bensdorf, D. A."

"Sept. 18, 1908.

"Messers. Marx & Bensdorf,

"Dear Sirs: I am sorry, but owing to the present conditions I must discontinue my policy No. ———.

"Thanking you for past favors, I am,

"Yours very truly,

"Box 109.                          George Richmond."

Sept. 19, 1908.

"Mr. George Richmond, City.

"We are in receipt of your favor of the 18th, inst., inclosing your accident renewal receipt for cancellation, and note your remarks that on account of present conditions you will be compelled to discontinue your accident policy.    We would suggest, however, that you keep your insurance in force, as there is no telling when a serious accident may occur to you, and we are perfectly willing to allow you to pay this premium one-half in sixty days and one-half in ninety days, if you prefer.

"We are holding the renewal receipt in the office, waiting to hear from you.

"We are very truly yours,

"Marx & Bensdorf, District Managers."

This last letter was misdirected, and never reached George Richmond.

The language of the renewal receipt is to the effect that the policy is continued in force, and the language of the letter accompanying it is that the policy is by the receipt renewed for six months. The reply of George Richmond uses the word "discontinue," indicating that he desired to put an end to something he thought then in existence, and the language of the letter of September 19th likewise indicated that the agents thought that the receipt evidenced a contract then in existence, because it mentioned the accident renewal receipt as something returning for cancellation, and suggested that "you keep your insurance in force," and says, "we will hold the renewal receipt in the office, waiting to hear from you." In addition to this, the evidence of the

witness Bourne, and of Walter Richmond, the brother of George Richmond, clearly indicates that the latter thought that by holding the receipt so long as he had he bound himself to take it for the six months, and that he would have to be released by the company or its agents. He desired to be released, because he wanted to substitute for his insurance in the Travelers' Insurance Company a policy in the Fidelity Accident Insurance Company.

Now it is perfectly clear that the agents of the insurance company, by sending the renewal receipt on September 2d to George Richmond, could not force the contract upon him, no matter how much they thought the company was bound by the language of the offer. It was, indeed, bound; but that was subject to the acceptance of George Richmond. He certainly did not accept it in terms, and the only reason there could be for holding that the contract was completed would be that George Richmond, by delaying to either accept or reject from September 2d to September 18th, had thereby become bound; that is, that the delay had amounted to an acceptance. No authority has been cited by counsel, and we have discovered none, indicating that such delay would amount to evidence of acceptance.

The nearest approach we have found to it is the case of *Adams* v. *Eidam,* 42 Minn., 53, 43 N. W., 690, referred to in section 58 of Joyce on Insurance. In that case it was held that a finding that an applicant received and retained without objection policies made out and

sent to him was equivalent to finding that he had accepted them; but there, it is seen, there was an application by him for insurance, and the sending of policies to him. By his retaining them an unreasonable length of time there was an inference that they were satisfactory to him, and that he had accepted them. In the present case, however, there was no application for insurance at all, but simply an offer or solicitation on the part of the insurance company, on September 2d, to renew an insurance policy which would expire on September 4th if not renewed. This was an offer which was not accepted. As to the matter of delay, the authorities are very numerous that an application for insurance will not, even though accompanied by a premium, be treated as accepted, although the company should delay to act upon the matter for months. Some of these authorities are referred to in section 57 of Joyce on Insurance. The subsequent authorities since the publication of that book are in entire accord with the text. There are cases to the effect that delay will hold the company, where the party making the application has been misled into believing that the insurance would be accepted, and, relying thereon, has refrained from obtaining other insurance. Here, it is observed, arises the element of injury and the consequent estoppel. On the other hand, it was held in one case that where a certain slip was sent to the insured, to be pasted on his policy, and he kept it without making any reply for a considerable time, he could not be held to have accepted the

slip modifying the contract by reason of the mere delay, unless it could be made to appear that the company had suffered some injury by the reason of the delay. *Shakman* v. *U. S. Credit System Co.*, 92 Wis., 366, 66 N. W., 528, 32 L. R. A., 383, 387, 53 Am. St. Rep., 920. The fact that the insurance agents entertained the mistaken view of law that the policy was in force, pending the offer of September 2d, until they received George Richmond's letter of September 18th, and that Richmond entertained the same mistaken view, and supposed that he would be held on the premium unless released by the company, did not change the rule of law that there can be no contract without mutual assent, and did not substitute for the ineffectiveness of that delay, in law, the opinion of these persons, or add to that delay an efficiency which the law did not attach to it.

We are referred by complainant's counsel to two cases as being conclusive of the present controversy. The first of these is *Travelers' Insurance Co.* v. *Jones*, 32 Tex. Civ. App., 146, 73 S. W., 978. In that case it appeared that an agent took the application of Jones for insurance, and this application was accepted by the company, and the policy sent to him pursuant to the terms of the contract. The facts just stated made such a contract. On receiving the policy Jones attempted to return it because he supposed that the amount of the premium that was to be paid in such installments was larger than he had contracted to pay, in which he was mistaken; however, he returned the policy to the com-

pany, and they sent it back to him. That is, after the contract was completed, they refused to agree to a cancellation. The difference between that case and the one before us is that here there was no contract made at all, but simply an offer of a contract, a tender. In the Jones Case, of course, the company had the right to refuse to cancel the contract after it was already complete, and it was liable thereon, Jones having died pending the attempted cancellation. The other case is *Waters v. Security Life & Annuity Co.*, 144 N. C., 663, 57 S. E., 437, 13 L. R. A. (N. S.), 805. In that case it appeared that in February, 1906, the insured made an application for a policy of insurance, and executed two notes as payment of premium, each for $107.30, payable at certain dates. The policy was delivered on February 25, 1906. On the next day the insured wrote to the company that it was not the kind of a policy he had bought, and he would not accept it. On March 2d the company wrote to him that the policy was all right as it was, but that an agent of the company would take the subject up with him and make the matter satisfactory to him. While matters were in this situation the insured died. Upon these facts the trial court directed a verdict in favor of the plaintiff. The court held: "If, therefore, the intestate acting under an erroneous impression, sent the contract back to the company, with the statement that it was not the policy he ordered, and he did not intend to pay the notes, the company could have made this proposition a binding

Richmond v. Insurance Co.

contract by an unconditional acceptance signified in some definite manner; but, until they did this, the act of the intestate in sending back the policy was nothing more than a proposal to cancel, and, if he died before acceptance, the negotiation was off, and the contract of insurance remained."

Here there was an application, and a transmission of the policy pursuant to the application, effecting the contract. If the policy was in accord with the application, the letter of the insured would not be effective to prevent the operation of the contract, because that would take place as soon as the policy was placed in the mail for transmission to the insured. It then became a question whether the company would cancel or modify. Pending negotiations for such cancelation or modification, the insured died, leaving the contract, of course, in its original state.

Now, the radical difference between these two cases and the one before us is that in each of these cited cases there was a completed contract before the attempted cancellation, and the party died pending the negotiations for cancellation. In the case at bar there was no completed contract at all, but simply an offer on the one side, and a delay to respond for about two weeks on the other side, and a final rejection. Surely, under such state of facts, there ought not to be any recovery.

Therefore the decree of the chancellor must be reversed, and the bill dismissed, with costs.