## WHITE v. GOUDCHAUX. (No. 2207.)

Court of Civil Appeals of Texas. El Paso.
Nov. 15, 1928.

Rehearing Denied Dec. 13, 1928.

Houtchens & Clark, of Fort Worth, for appellant.

C. A. Wright, of Fort Worth, for appellee.

HIGGINS, J. This suit originated in the justice court. It is a suit by appellee, Goudchaux, against appellant, White, upon a promissory note executed by the latter to Goudchaux's order in the sum of $117.33, dated August 28, 1925, due four months after date. Upon appeal to the county court at law, the jury was peremptorily charged to find for the plaintiff.

The note was given to cover the first year's premium upon an insurance policy for $3,000 upon appellant's life, issued by the Southern Life Insurance Company, of Fort Worth, Texas. The payee of the note was the agent of such company, and represented it in soliciting appellant's application for the policy.

In bar of the action defendant set up that Goudchaux falsely and fraudulently represented that the policy to be issued contained certain accident and sick benefit provisions, which, in fact, it did not contain, wherefore the consideration for the note had failed.

The suit was filed March 8, 1927, which was about 18 months after the execution and delivery of the policy by the insurer, and about 14 months after the maturity of the note. The testimony of defendant is sufficient to show a misrepresentation by appellee as to the terms of the policy relating to sick benefits, which misrepresentation was made at the time appellant was solicited to apply for the policy. He further testified:

"He didn't explain to me whether I would be entitled to that after I got to be 60 years old, and besides that before this note became due I got sick and had a nervous breakdown and wrote to the company about it, and the company never did answer me about whether I was going to get anything on it. This note became due in August, I think it was, so I never paid any attention to it until in July, 1927, and they sued on it, and I told them I didn't want the policy as it wasn't what they had sold me. It was about a year before they sued me; they never had answered my letters. * * * I first found out what this policy really contained when I wrote them that letter about paying me for my benefit—my sickness, I began then to realize what I was up against. * * * When I found out the policy was not as represented I told them it was not—well I didn't exactly tell them either. I just refused to pay the note because they refused to pay me my accident policy. I didn't think it was necessary for me to pay my $117, when they wouldn't pay me no sick benefit, and they waited for a little better than a year before they said anything about it. * * * I got sick before the note became due. The note became due in August. * * * I wrote them a couple of letters. After I found out the policy was not as represented, then I notified them to that effect; I told him I didn't —I would have turned the policy back if they had canceled this note, but they never did give me any answer. * * * I had a nervous breakdown. I was played out and not able to work. I wrote to the company and told them I was sick and would like to have some sick benefit if they could pay it. I told them that I couldn't attend to my af-

fairs. * * * I wrote them a couple of letters. My daughter wrote the letters. I didn't read them. I didn't write that letter; that was my daughter who wrote it; I didn't write it. I think I know what was in that letter. I never did see the letters at all."

■ We have no doubt of the right of an assured, in a proper case, to have rescinded the contract evidenced by a policy, and note given for the premium, upon discovery of the falsity of a representation respecting a sick benefit provision. Mutual Life Ins. Co. v. Hargus (Tex. Civ. App.) 99 S. W. 580. The question is sometimes complicated by the failure of the assured to familiarize himself with the terms of the policy when it is delivered to him, and consequent delay in discovery of the fraud practiced.

■ But in the present case appellant, by his own testimony, shows that before the note was due, which was four months after the policy was delivered, he learned it did not contain the sick benefit provision as represented. Notwithstanding this knowledge he failed then to exercise his right to rescind. Upon discovering that the policy was not as represented, it was incumbent upon him to return or offer to return the policy or otherwise show repudiation and rescission upon his part. By failing so to do the policy remained a binding obligation upon the assurer according to its terms and bars appellant's defense when sued upon the premium note. It has been so held in this state in cases upon facts similar to this one. New York Life Ins. Co. v. Miller, 11 Tex. Civ. App. 536, 32 S. W. 550; Ribble v. Roberts (Tex. Civ. App.) 180 S. W. 620. See, also, Travelers' Ins. Co. v. Jones, 32 Tex. Civ. App. 146, 73 S. W. 978; Leigh v. Brown, 99 Ga. 258, 25 S. E. 621, and 3 Cooley, Briefs on Insurance, p. 2852.

In the second case cited it was said: "The refusal of Wilson to respond to this letter and his neglect to conform to the request therein made, with the continuous retention of the policy on the part of appellee, is sufficient, we think, to show his acquiescence in and ratification of the policy as written, and will therefore estop him from asserting the contrary. Having had the benefit of the policy from its date, thereby giving the beneficiary a right of action thereon in the event of his death, he should not now be permitted to repudiate the payment of the notes on the ground of failure of consideration; but, on the contrary, that he did must be regarded as an election by him to treat the policy as being in full force."

■ It is true appellant testifies about some letters he says his daughter wrote for him to the assurer. The daughter did not testify. It was not shown they were stamped and mailed. The officers and employees of the assurer in charge of its correspondence and files testified no such letters were ever received. All of defendant's evidence as to the contents of the letters has been quoted. Assuming they were written and received by the insurer, defendant's testimony does not show that they constituted an election by him to rescind the contract. For the reason stated, the court did not err in giving the peremptory instruction.

■ The overruling of the general demurrer to the plaintiff's supplemental petition presents no reversible error. If it be assumed the pleading was defective in the particular alleged, it is plain upon the whole record the omission complained of did not in any wise contribute to the judgment rendered. So, if the demurrer was improperly overruled, the error is harmless. Davis v. White (Tex. Civ. App.) 207 S. W. 679; Wyatt & Wingo v. White (Tex. Com. App.) 228 S. W. 154; Midland & N. W. R. Co. v. Midland Mercantile Co. (Tex. Civ. App.) 216 S. W. 627; Merchants' & Bankers', etc., v. Williams (Tex. Civ. App.) 181 S. W. 859. This is particularly true as to a justice court case, where the pleadings are not required to be in writing. Article 2388, R. S.

Affirmed.