## J. S. WILLIAMS AND J. J. BOWDEN v. CAPE FEAR LUMBER COMPANY.

(Filed 9 October, 1918.)

**1. Appeal and Error—New Trial—Evidence—Tort.**

When the Supreme Court, on appeal, has only decided that an instruction of the lower court, in effect, that the defendant would not be liable for damages in trespass for its grantee's cutting other trees than those it had conveyed, was erroneous, the question of whether the defendant participated in the alleged wrongful act was left open for the new trial, and evidence relating thereto may be introduced thereon, the competency of such to be then passed upon.

**2. Torts—Joint Tort Feasors—Evidence.**

Where an injury is caused to another by a wrong committed by different parties who owe him the same duty, and their acts naturally tend to a breach thereof, the wrong may be regarded as joint, for which both of the parties committing it may be held liable as joint tort feasors; and the joint tort may be shown by direct proof or by circumstantial evidence, such as the relationship of the parties, their dealing with each other, and their acts and conduct before and after the tort, when relevant to the inquiry.

**3. Contracts—Torts— Timber— Deeds and Conveyances— Evidence —Questions for Jury.**

Where the action is to recover damages of the defendant for cutting timber not conveyed in the plaintiff's deed, and there is evidence tending to show that such injury was wrongfully caused by the defendant's grantee, it is competent to show, as to the joint tort, that the defendant and its grantee were corporations chartered by the laws of the same State, had offices in the same building, with many stockholders and some officers common to both; that the defendant's president was the general manager

of its grantee corporation; that the grantee corporation had cut the timber unlawfully for a considerable period, and in settlement, though made through a trust company, had to account to the defendant's officer, the amount to be determined by the number of all trees cut by a certain rule agreed upon, the amounts returned to the trustee including those for trees so unlawfully cut.

**4. Principal and Agent—Respondeat Superior—Contracts—Torts—Damages —Corporations.**

Where there is evidence tending to show that the tort complained of was committed by a corporation under contract with the defendant corporation, and while the work was under the management or control of an officer of them both, the acts and knowledge of such officer in respect to the facts and circumstances under which the tort had been committed will be imputed to the defendant, his principal, as its own, under the principle of *que fecit per alium fecit per se.*

**5. Same—Fires.**

Where a corporation, as grantee of defendant corporation of certain timber, has negligently set out fires to the lands of the plaintiff, the defendant's grantor, by the operation of its engines used in cutting the timber, under the charge of an officer of both corporations, the acts of the officer for both corporations will be imputed to the defendant.

**6. Contracts—Independent Contractor—Dangerous Instrumentalities—Fires —Damages—Principal and Agent.**

A principal may not escape liability for damages caused by an independent contractor, when the work, under the contract, contemplates the use of instrumentalities dangerous to the rights of others—in this case, damages to the land of the owner from fires negligently set out by an engine in cutting the timber therefrom.

**7. Pleadings—Admissions—Information and Belief.**

Admissions in the answer as to matters alleged on information and belief in the complaint are admissions of the matters so alleged, and not confined to the fact that the defendant has been so informed and believes them.

ACTION tried before *Calvert, J.,* and a jury, at March Term, 1918, of DUPLIN.

The action was brought to recover damages for cutting and burning timber belonging to plaintiff's testator, and the case was before this Court at Fall Term, 1916. It is reported in 172 N. C., at p. 297, where the principal facts are stated, as they then appeared. We awarded a new trial at that term, and the case was again tried below, when the jury returned the following verdict upon issues then submitted by the court:

1. Did the defendant Cape Fear Lumber Company wrongfully cut and remove timber and trees of plaintiff's testator, R. J. Williams, as alleged? Answer: Yes.

2. If so, what damages are plaintiffs entitled to recover by reason thereof? Answer: $2,000, with interest from 1 August, 1911.

3. Did defendant Cape Fear Lumber Company wrongfully set fire to and burn and injure the R. J. Williams, Brown, place and the timber trees, lightwood, straw, and woodsmold thereon, as alleged? Answer: Yes.

4. If so, what damages are plaintiffs entitled to recover by reason thereof? Answer: $1,500, with interest thereon from 4 July, 1911.

5. Did the defendant Cape Fear Lumber Company wrongfully set fire to and burn and injure the part of the R. J. Williams home place, near the gin, and the timber, trees, lightwood, straw, and woodsmold thereon, as alleged? Answer: Yes.

6. If so, what damages are plaintiffs entitled to recover by reason thereof? Answer: $200, with interest from 1 July, 1911.

The judgment was rendered upon this verdict, and defendants appealed.

The other facts necessary to be stated will be found in the opinion.

*H. D. Williams, W. F. Ward, and A. D. Ward for plaintiffs.*
*Langston, Allen & Taylor and Stevens & Beasley for defendant.*

WALKER, J., after stating the case: When this case was before us at a former term the discussion was restricted to an instruction of the court with respect to the deed from the defendant to the Camp Manufacturing Company, as bearing upon the liability of the defendant for cutting the trees, the lower court then holding, by its instruction, that any trespass committed by the Camp Manufacturing Company, under the authority of that deed, by cutting trees on the land not conveyed thereby, would be considered as the act of the defendant, and make it liable to the plaintiffs for such unlawful act or wrong. The jury were then instructed that, under those facts, if found by them, they should answer "Yes" to the following issue: "Did defendant Cape Fear Lumber Company wrongfully cut and remove timber and trees of plaintiffs' testator, R. J. Williams, as alleged?" and the jury responded to the issue in the affirmative under that instruction, the fact as to the cutting of the timber by the Camp Manufacturing Company not being seriously questioned, the defendant contending that an entry by the Camp Manufacturing Company under the deed, and cutting the timber, would not of itself have the effect in law given to it by the court. And we so held, for the reasons stated in the opinion of the Court, this being substantially all the Court decided; and for this error alone the new trial was ordered. This will more clearly be seen from the following language of the Court:

"The instruction of the court, when considered in connection with what precedes it, and the reference in the instruction to trees under a

certain dimension, which is mentioned in the deed, being cut by the Camp Manufacturing Company, shows that it had reference to the authority given to said company by the deed to cut trees; and as thus treated, it was too broad. The Camp Manufacturing Company could cut, under the terms of the deed, only such trees as are described therein, and if it cut other trees the appellant would not be liable therefor unless it gave some authority apart from the deed to do the act. Its authority given by the deed to cut trees of a certain dimension did not, of course, extend to trees not of that kind, and the Camp Manufacturing Company would be liable alone for the trespass if it did cut other trees, in the absence of any proof showing that the appellant participated in the cutting or was in some way connected with it."

And again in another part of the opinion: "The Camp Manufacturing Company was authorized by the deed to enter upon the land and cut and remove trees, but not trees which did not come within the description of the deed; and for this reason the instruction was calculated to mislead the jury as to the law and the nature of the appellant's liability for the trespass of the Camp Manufacturing Company, if there was any liability on its part. The instruction, as we have said, manifestly referred to an entry upon the lands under the deed to cut timber, and this extended the appellant's liability for the excessive acts of the other company beyond its legitimate scope."

In regard to the receipt of rent by the defendant from its grantee, we said: "The acceptance of rent, without any knowledge of the sources from which it came, or for what it was given, would not create liability for the tort or trespass of the Camp Manufacturing Company, as we have seen by the above reference to 38 Cyc., 486. The receipt of the money must be such as would amount to a ratification of the trespass, or, under some circumstances, it might be evidence of a participation therein. The instruction requested by the appellant is correct in principle, and should have been given unless it has been extended to too many of the issues. We do not see now how it affects the seventh issue. If the appellant did nothing more than convey the trees he then owned of a certain kind and dimension, and merely received the price *therefor,* we do not see how it can be liable for the trespass of the Camp Manufacturing Company in cutting trees not described in the deed. . . . Plaintiff may be able to show that, under all the facts and circumstances of the case, the jury should find that there was concert of action between the companies or that the appellant did so act as to authorize the trespass, and if it did not do so originally, it has since so acted as to ratify or endorse it."

It appears that this Court did not undertake to decide at that time what was the legal effect of the evidence as it then stood—that is,

whether there was any to prove a joint trespass, apart from the deed and entry thereunder by the Camp Manufacturing Company—but confined itself solely to a construction of the deed and to the effect of the mere cutting of timber by the grantee after he had entered upon the land under the deed, without passing upon the question as to the sufficiency of the evidence, in law, to show a concert of action between the two companies, or, in other words, a joint trespass. That matter, therefore, was left fully open for present consideration, without our being controlled by the former decision, or even embarrassed by anything said in the opinion of the Court. We merely held that, in view of the terms of the deed then being construed, the instruction of the court to the jury concerning the same was too broad, and therefore misleading. Very different, though, is the question presented now, when we are to inquire and declare whether there is *any* evidence tending to show that the defendant participated in the tortious act of the other company which was committed when it cut trees not conveyed by the deed.

When two or more are engaged in an unlawful enterprise which causes damage to another, each is individually responsible for all injuries committed in its prosecution, and this although the specific injury was done by one of the parties alone, the liability of the other being founded upon the concert of action. 38 Cyc., 487; *Smithwick v. Ward,* 52 N. C., 64; *Grigg v. Wilmington,* 155 N. C., 18; *C. V. Coal Co. v. Wilson,* 67 Ill. App., 443. So when different parties owe the same duty, and their acts naturally tend to the same breach of that duty, the wrong may be regarded as joint and both may be held liable. 38 Cyc., 483; *E. L., etc., Co. v. Hiller,* 203 Ill., 518.

When there is community of fault, the rule of joint liability applies, and the parties concerned are joint tort feasors. This joint concert or agreement may, of course, be established, not only by direct proof of the facts going to create it, but by circumstantial evidence. The relations of the parties may be considered, and their dealings with respect to the property upon which the tort is committed, and also their acts and conduct before and after the commission of the tort. These corporations were evidently closely allied in interest. They were chartered in the same State, and their domicile was then in the same town (Franklin, Va.), and the same house, where they had their principal office. They were both engaged in the same kind of business, and some of the officers of both companies were the same, Mr. J. L. Camp being the president of one, the defendant in this case, and vice-president and general manager of the other, and many of the stockholders were common to both. Then there is the circumstance that this unlawful cutting was being done for a considerable period of time, from which it would be inferred that if the defendant had looked after its business with any reasonable care and

oversight, it had some knowledge of what was going on. It had a direct and important interest in the cutting, at least to the extent of stimulating inquiry as to how it was being done, for it could not know whether it was receiving its proper rentals, through the Atlantic Trust and Banking Company, at Wilmington, N. C., without some such knowledge on its part. The Camp Manufacturing Company was to be the debtor of the defendant for all trees cut under the deed, the amount to be determined by the number cut and by a certain rule agreed upon. But whether this was being done according to the contract was a matter which deeply interested the defendant, and it would not be apt, as a prudent business concern, to leave the calculation of the amount due, or of the number of trees cut, to the sole judgment of the other company, whose interest was, in this respect, adverse to its own. This would not be in accordance with the ordinary business rule. The returns were made by the Camp Manufacturing Company to the trust company, but how could the defendant know of their correctness unless it had itself, or through some person acting for it and having its confidence, investigated the matter and verified the returns, or have been in some way assured of their accuracy? If its officer was left in charge of the cutting, the inference might fairly be drawn by the jury that he gave the company all the information concerning what was being done on the land. It is hardly to be conceived that the defendant managed its business so loosely and carelessly as not to know from what particular source the various sums came, which were, from time to time, being paid by the Camp Manufacturing Company to the trust company at Wilmington; that it caused no tally or audit to be made, or no report to be sent in to it of how many trees, with the sizes, were being cut on the land, but relied altogether and implicitly on the returns to the trust company, without any investigation whatever and without checking up the account. There are other circumstances which more or less go to show knowledge. That such a course was taken would tax to the utmost the simple faith of the most credulous and confiding. There are other circumstances which more or less go to show knowledge of what was actually done; and, further, that the relations between these companies was so intimate and confidential as to give some assurance that they had a common interest in their affairs, although in the disguise of separate and distinct corporate names.

The law does not look merely at the form of things, but seeks to lay bare the real transaction. We have been told that there is nothing in a name, and it also is true that there may be nothing in two, which signifies a real plurality of beings, or entities. We are not saying, or even intimating, that the two names were used to deceive or to conceal the real status, but the plaintiffs had the right to show and convince the jury, if they could do so, that there was in fact but one company though having

two names. If it was but one entity, the defendant is liable for the trespass, because manifestly it would then be chargeable for its own act; and if there were two companies, in fact as well as in name, then their business relations and the other circumstances in evidence might be considered to determine whether they were actually working together to the same end—sharers in the same enterprise, and, therefore, in all of the responsibilities and liabilities growing out of it. But the question is not only whether there was one company, but whether, if there were two, they united in committing the tort.

It would be vain to analyze the evidence more closely, or to state it more fully, as no useful precedent would be established for guidance in any other case, upon the question of its legal sufficiency, if we should do so. We need only say that there was some evidence, and at least more than a scintilla, for the consideration of the jury. We may add, though, that if J. L. Camp was placed in charge of the work by both companies, if there were two, then, being their agent, his knowledge of the cutting, and his acts, would be imputed to his principals as their own. *Qui facit per alium facit per se.*

What we have said applies as well to the burning of the timber, and, besides, if J. L. Camp represented both companies and knew the plaintiffs' property was exposed to danger from fire by the engines used in the cutting of the timber, the defendant would be liable for the consequent burning of the same. The Camp company was authorized to do the work in this way, by using an engine—a dangerous instrumentality—and even if an independent contractor, as contended by defendant, it would still be liable for his acts and the damage which was caused by his acts. *Thomas v. Lumber Co.,* 153 N. C., 351. It was said in *Davis v. Summerfield,* 133 N. C., 325: "There is still another class of cases to be excepted from the exemption, and that is where the contract requires an act to be performed on the premises which will probably be injurious to third persons if reasonable care is omitted in the course of its performance. The liability of the employer in such cases rests upon the view that he cannot be the author of plans and actions dangerous to the property of others without exercising due care to anticipate and prevent injurious consequences." In *Bower v. Peate,* 1 Q. B. Div. (1875-6), p. 321, *Chief Justice Cockburn* thus states the rule: "The answer to the defendant's contention may, however, as it appears to us, be placed on a broader ground, namely, that a man who orders a work to be executed, from which, in the natural course of things, injurious consequences to his neighbor must be expected to arise, unless means are adopted by which such consequences may be prevented, is bound to see to the doing of that which is necessary to prevent the mischief, and cannot relieve himself of his responsibility by employing some one else—whether it be the contractor employed to

do the work from which the danger arises or some independent person—to do what is necessary to prevent the act which he has ordered to be done from becoming wrongful. There is an obvious difference between committing work to a contractor to be executed, from which, if properly done, no injurious consequences can arise, and handing over to him work to be done from which mischievous consequences will arise unless preventive measures are adopted." The authorities are fully collected in *Thomas v. Lumber Co., supra,* and no further comment or citation of authorities is necessary, except to state that *Thomas v. Lumber Co., supra,* has frequently been approved by this Court, and notably in the recent cases of *Dunlop v. R. R.,* 167 N. C., 669, and *Strickland v. Lumber Co.,* 171 N. C., 755. In the case last cited the Court sets out the quotation in *Thomas v. Lumber Co., supra,* from *Bridge Co. v. Steinbrock,* 61 Ohio St., 215 (76 Am. St., 375), as follows: "The weight of reason and authority is to the effect that where a party is under a duty to the public or a third person to see that work he is doing, or has done, is carefully performed so as to avoid injury to others, he cannot, by letting it to a contractor, avoid liability in case it is negligently done to the injury of another (citing numerous authorities). The duty need not be imposed by statute, though such is frequently the case. If it be a duty imposed by law, the principle is the same as if required by statute. *Cockburn, C. J.,* in *Bower v. Peate, supra.* It arises at law in all cases where more or less danger to others is necessarily incident to the performance of the work let to contract, that raises the duty and which the employer cannot shift from himself to another so as to avoid liability, should injury result to another from negligence in doing the work." So it was held in *Heilig v. Jordan,* 53 Ind., 21 (21 Am. Rep., 189), that where the owner of real estate on which there is a kiln for drying lumber leases with knowledge that the kiln will be used by the lessee for that purpose, and knowing, or having reason to know, that such use will be dangerous to an adjoining house, he is liable to the owner of such adjoining house if it be burned by fire communicated from the kiln while managed by the lessee. "Whoever, for his own advantage, authorizes his property to be used by another in such manner as to endanger and injure unnecessarily the property or rights of another is answerable for the consequences. Sometimes the liability has been referred to the law of nuisance, but it exists when predicated upon negligence equally as when predicated upon an intentional wrong." *Boston Beef Packing Co. v. Stevens,* 12 Fed., 279, 280.

"One who demises his property for the purpose of having it used in such a way as must prove offensive to others may himself be treated as the author of the mischief." 38 Cyc., 482, and note 84; *Fish v. Dodge,* 4 Denio (N. Y.), 311.

The case seems to have been tried on its merits, and the verdict is well sustained by the proof. The charge of the court was comprehensive and clear, and in some respects more favorable to the defendant than it had a right to expect. It would serve no useful purpose to consider the exceptions one by one. We have discussed the salient points of the case—those that are the essential ones—which is all-sufficient. Defendant received the proceeds from the unlawful cutting and has not given them up, nor, so far as appears, does it propose to do so, after full knowledge of the facts.

We do not assent to the defendant's construction of the allegation of section 7 of the complaint, and the admission thereof in the answer. It would be giving a very narrow interpretation of the real meaning and scope of the admission if we should hold that it was merely an admission that plaintiffs had been informed of the facts alleged. It is an admission of the matter alleged, though the allegation is based on information and belief. *Kitchin v. Wilson,* 80 N. C., 195; *Gardner v. Lumber Co.,* 144 N. C., 110, 113. What plaintiff alleged was that defendant owned the trees at the time of the trespass, and this is what was admitted. The long course of dealing with and in making returns to the trust company through J. L. Camp, and the latter's deposition, furnished sufficient evidence, which is at least *prima facie* of his authority to make the reports and of their genuineness. It may be that the defendant did not actually participate in the wrong charged against it, but we are bound by what is stated in the record, and we are unable to hold that there is no evidence of such participation.

We have carefully examined the numerous exceptions taken by the defendant, and the evidence and charge of the court, and find no substantial error of which the defendant can justly complain.

No error.