W. M. FOX, Administrator, v. VOLUNTEER STATE LIFE INSURANCE COMPANY.

(Filed 14 March, 1923.)

1. **Insurance—Actions—Parties.**

   The administrator of the deceased insured is the proper party to bring an action upon contract of insurance making the policy payable to the personal representatives.

2. **Insurance—Principal and Agent—Torts—Delivery of Policy.**

   Where the authorized agent of a life insurance company to deliver a policy could have delivered the same during the good health of the applicant, and delays to do so until the applicant is in ill health, and then not entitled to its delivery under his agreement, except for the delay: *Held*, it is for the jury to determine whether it was the unreasonable delay of the insurer's agent that prevented the delivery of the policy during the continued good health of the applicant, and, if so, the insurer was liable to the beneficiaries of the deceased applicant upon the tort of its authorized agent.

3. **Same—Premiums—Stipulations—Waiver.**

   The rules of an insurance company required the prepayment of the premium on a life insurance policy, and provided that upon the acceptance of the applicant by the medical examiner at the head office of the company the policy would be in force. The local agent agreed with the insured that the payment was to be on delivery to him of the policy, upon the same condition, of which change the home office must have had knowledge when it sent the policy to the local agent for delivery: *Held*, the stipulation as to the prepayment of the premium was in favor of the insurer, which it had waived by its conduct.

4. **Insurance—Principal and Agent—Soliciting Agent—Agent for Delivery —Statutes.**

   The soliciting agent of a life insurance company, who is also charged with the duty to deliver the policy to the applicant, is the agent of the company, and makes it liable for its agent's tort in failing to deliver it within a reasonable time after its receipt by him from his principal for that purpose. C. S., 6457.

5. **Insurance—Principal and Agent—Delay in Delivering Policy—Torts— Questions for Jury—Trials.**

   Where a policy of life insurance was to become effective upon the delivery by the local agent to the applicant while he was in continued good health, and after the receipt of the policy by the accredited agent from the home office, the insured has demanded the delivery of the policy and tendered payment of the premium in accordance with the terms of the contract, and the tender has been kept good, the beneficiaries, after the death of the insured, may recover of the insurer the face value of the policy upon the tort of the agent in failing to deliver the policy within a reasonable time, which is for the jury to determine.

**6. Same—Contracts—Consideration—Actions.**

> Where a policy of life insurance would have been delivered to the applicant before his death, and have become binding on the company except for the tort of its agent in failing to deliver it within a reasonable time, the action of the beneficiaries after the death of the applicant will not fail on the ground that there was a want of consideration.

Walker and Adams, JJ., concurring; Stacy, J., dissenting.

Appeal by plaintiff from *Shaw, J.,* at April Term, 1922, of Madison. This was an action to recover the sum of $3,000 on account of the alleged wrongful and negligent failure of defendant's agent to make delivery of the policy of insurance issued by defendant to plaintiff in accordance with agreement between them. When the application was taken it was stipulated that the premium would be paid on the delivery of the policy.

The application was received in the home office of defendant in Chattanooga, Tenn., on 7 June, 1921, and was duly approved and accepted, and on 15 June, 1921, the policy was issued and sent to Charles Buckner, the local agent at Mars Hill, N. C., for delivery to the plaintiff's intestate. The said Charles Buckner was soliciting agent for the defendant, and it was a part of his duty to deliver policies of insurance.

It is admitted that plaintiff's intestate was in good health at the time he made application for insurance, and the evidence is undenied that such good health continued for about 2 weeks after the policy was received by the agent for delivery; that plaintiff's intestate first became ill on 2 July, 1921, and developed typhoid fever, which caused his death on 14 July, 1921. He was a strong, healthy man, and in good health up to 1 July. He was engaged in hauling tan bark and hauled the last load on 3 July.

The agent took the policy to the home of the plaintiff's intestate on 6 July, 1921, and finding that plaintiff's intestate was sick at that time, did not leave the policy, but promised to return with it later in the day. A tender of the premium was then made, and the delivery of the policy demanded. At that time the agent said: "I ought to have delivered this policy some time ago. I have had this policy on hand something like two weeks or over." The agent also stated that he met plaintiff's intestate after the policy was received for delivery, and that plaintiff's intestate told him that he had the money to pay the premium, and requested agent to make delivery of the policy, and that he neglected to make delivery because he waited for other policies, and for a Mr. Hyder, who was to make the trip with him. The agent and plaintiff's intestate lived at and a few miles from Mars Hill, respectively.

At the time the defendant sent the policy to its agent for delivery to the plaintiff's intestate, the policy was enclosed in an envelope on which

was stamped, "You are now a policy holder in the *Volunteer State Life Insurance Company at Chattanooga, Tenn.*"

When the plaintiff rested his case the defendant moved for a nonsuit, which was allowed, and the plaintiff excepted and appealed.

*Mark W. Brown for plaintiff.*
*Martin, Rollins & Wright for defendant.*

CLARK, C. J.   The policy of insurance in this case was issued in favor of the executor or administrator, the application was signed by plaintiff's intestate, and the plaintiff, as his administrator, was the proper party to bring the action.   C. S., 159.

This is not an action upon the policy itself, which was not delivered, but upon the wrongful act or negligence of the defendant company through its agent to deliver the policy in accordance with the agreement entered into with the intestate.

It is true that if it had been stipulated in the application for this policy that the insurance applied for should not take effect until 60 days thereafter, and then only upon the applicant's continued health, the insurance company would have incurred no liability had the applicant died during the 60-day period.   The difference between that case and the present is that here the company made an agreement with the intestate, and the failure to comply with that agreement by the negligence of the defendant company through its agent was the cause, as the plaintiff alleges, of his failure to receive the policy, and the loss accruing therefrom is a liability incurred by the negligence of the defendant.

When the condition upon which the contract of insurance was to take effect never occurred, of course no insurance is effected; but when the negligence of the company to comply with the conditions specified in its contract for the delivery of the policy was the cause of the failure to deliver the same, the defendant company was liable for the loss sustained by the negligence of the agent of the defendant company.   The defendant by such negligence breached the legal duty which it owed to the plaintiff's intestate, and for the damage sustained thereby an action in tort may be maintained.

The testimony is that the defendant adopted the custom in carrying on its business of accepting applications, and issuing applications therein for delivery by its agent, stipulating in the application that the premium should be paid on delivery of the policy, and that the policy would be in force and premiums collected therein as and from the date thereof. The defendant, therefore, cannot escape liability when there is uncontradicted evidence that but for the unreasonable delay of its agent in making delivery of the policy to plaintiff's intestate, the policy would have been delivered while the plaintiff's intestate was in good health.

The application for the policy was received at the home office in Chatta-
nooga on 7 June, 1921, was duly approved and accepted by the defend-
ant, who, on 15 June, sent the policy so dated to its local agent at
Mars Hill, N. C., for delivery to the plaintiff's intestate.

It has been repeatedly held that an insurance company is chargeable
with the negligence of its agent for failing for an unreasonable time to
forward the application and medical report for acceptance or rejection.
*Duffey v. Life Assn.*, 160 Iowa, 19; 46 L. R. A. (N. S.), 25. There is
a full discussion and collection of the cases relating to unreasonable delay
in acting upon applications for insurance in *Bradly v. Federal Life Ins.
Co.*, 15 L. R. A., 1021, and in the notes thereto. In this case there was
no negligence by any unreasonable delay in forwarding the application,
nor in acting upon it, but the application was accepted and the policy
was issued and signed on 15 June, and promptly forwarded to the
defendant's delivering agent in an envelope stating on the back that the
applicant was "now a policy holder in the Volunteer State Life In-
surance Company," the defendant in this action.

This policy, in the ordinary course of mail, should have come to the
hands of the defendant's delivering agent on the next day, 16 June.
He lived not far from the insured, who met him a few days after the
receipt of the policy, and the agent told him that he had the policy for
delivery. The assured told him he was ready to pay the premium, and
asked the agent to make delivery, which the agent promised to do. The
assured remained in good health until 2 July—15 days thereafter, when
he was stricken with typhoid fever, and the agent made no effort to
deliver until 6 July, when he declined to deliver because at that time the
assured had been taken ill. Had the policy, when placed in the mail
on 15 June, been directed to the insured, this would have been a delivery
in law. *Lynch v. Johnson,* 171 N. C., 611. The fact that it was sent
addressed to the defendant's agent made the agent a trustee for the
delivery to the insured, and it was negligence on the part of the agent
not to deliver it in reasonable time, and this negligence was the negli-
gence of the company.

If the defendant's agent wrongfully failed to deliver the policy within
a reasonably short time after its receipt, during which time the plaintiff's
intestate was in good health and ready, able, and willing to pay the
premium on delivery, as stipulated, and plaintiff's intestate having
thereafter become ill, the defendant could not withhold the delivery so
as to release it from responsibility. *Trust Co. v. Ins. Co.,* 173 N. C.,
563.

The defendant had a form of receipt attached to its application for
advance payment of premium, and it was stipulated therein that the
insurance was effective from the date of the approval of the application

from the defendant's medical director. The agent elected to waive the advance payment on the premium, and stated that the premium was to be paid on delivery of the policy. The defendant accepted the application and issued its policy with knowledge of the waiver and stipulation. That is, it agreed that the insurance was to be effective from the date of the approval of the application by its medical director, but that the premium need not be paid until the policy was delivered.

In *Paul v. Ins. Co.,* 183 N. C., 159, it was held: "The time limited by a contract of life insurance for the payment of premiums to avoid a forfeiture is for the benefit of the insurer (the company), which it may waive by its acts and conduct."

In *Elam v. Realty Co.,* 182 N. C., 602, this Court said: "This action is not one against the insurance company in which plaintiff is seeking to hold it liable for an obligation not contained in the written policy, but plaintiff sues the agent broker for negligent failure to perform a duty he had undertaken and assumed as agent, by which plaintiff has suffered the loss complained of, and in our opinion the authorities cited are not apposite to the question presented on the record. It is further insisted for defendant that no cause of action is disclosed because there is no consideration given for defendant's promise, but the better considered decisions on this subject are to the effect that while the agent or broker in question was not obligated to assume the duty of procuring the policy, when he did so the law imposed upon him the duty of performance in the exercise of ordinary care."

The liability of the agent for negligently failing to perform his duties is clear, and the defendant is also liable for the acts and omissions of its agent within the scope of his employment. The duty rests upon every man to so conduct his affairs whether by himself or his agent as not to injure another, and if he does not do so, and another is thereby injured, he shall answer for the damages. Inasmuch as he had made it possible for his employee to inflict the injury, it is but just that he should be held accountable. 21 R. C. L., pp. 844 to 846; *Williams v. Lumber Co.,* 176 N. C., 180.

The soliciting agent of the defendant is made its agent and not the agent of the applicant. C. S., 6457. There are numerous decisions to the above effect.

The above authorities exactly apply to the case before us, and with the additional force that in this instance during the 15 days from the receipt of the policy to the time (2 July) during which the insured was in good health, he met the defendant's agent, who told him he had the policy for delivery and would deliver the same, and the assured told him that he was ready and able to make the payment and asked for the delivery, and there is the additional fact in this case that the policy

stated on its face that it was in effect from its date, from which time forward payments of premiums were to be counted, and the defendant was aware of the agreement that the company waived payment of the advance premium until its agent should make delivery.

Whether a policy is for life insurance or for fire insurance, the party making the application is entitled to have the security he asks for, and when his application has been accepted, as here, upon an agreement that the policy shall be valid from such acceptance, the insured should not be deprived of the benefit of the policy by the negligence of the company's agent in making delivery.

In *Duffey v. Life Ins. Co.* (Iowa), 46 L. R. A. (N. S.), 25, it is held: "An insurance company is chargeable with the negligence of its agent in failing for an unreasonable time to forward application and medical report for acceptance."

It is held that the insurance company is liable for negligent delay in passing upon or issuing a policy until a loss. *Boyer v. Ins. Co.,* 40 L. R. A. (N. S.), 164; and for unreasonable delay in passing upon an application. *Ins. Co. v. Neafus,* 36 L. R. A. (N. S.), 1211.

This case is much stronger, for here the application was accepted, the policy was issued, and was sent to the defendant's agent for delivery. He gave notice of its possession to the assured, who asked for its delivery and offered to pay the premium, and the failure to deliver was caused by the unreasonable delay of the agent, who should have delivered it, or, at least, the jury should have been permitted to find as a fact upon the evidence whether the delay was unreasonable or not.

In the very recent case of *Ins. Co. v. Phillips,* 113 S. E., 815, in which the opinion was filed 26 September, 1922, the Court of Appeals of Georgia held: "The deposit by the insurer in the mails of a policy of life insurance, addressed to the local agent of the insurer for delivery to the insured, upon which the premium has been paid and accepted by the insurer, amounts to its acceptance of the application and the delivery of the policy to the insured, and is a binding contract of insurance, and this is not defeated by the death of the insured before delivery of the policy, when at the time of the deposit of the policy in the mails he was alive and in good health, although he died before it was actually received by the local agent for delivery," citing 14 R. C. L., 899; 25 Cyc., 718; 16 A. & E. (2 ed.), 855; Joyce on Insurance (2 ed.), sec. 90; *Kilborne v. Ins. Co.,* 99 Minn., 176; *Francis v. Ins. Co.,* 55 Oregon, 280. To same purport, *Hoke, J.,* in *Waters v. Annuity Co.,* 144 N. C., 663.

The judgment of nonsuit should be set aside, and it must be submitted to the jury to pass upon the question whether upon the evidence there was unreasonable delay on the part of the defendant's agent in the delivery of this policy to the assured.

Reversed.

WALKER, J., concurring: I concur in the opinion of the Court, as written by the *Chief Justice,* and also in that of *Justice Adams,* not discerning any substantial difference between them.

Under ordinary circumstances the premium must first be paid and the policy delivered before the latter can take effect, that may readily be conceded. But the question here is quite different. The company promised to deliver the policy promptly, so that it would take effect and be available to the beneficiary when the applicant should die, and it made full preparation to do so, giving its agent orders to deliver it, which he failed to obey, as it was not personally convenient to do so because he thought he might save some time and effort if he should wait for an accumulation of policies to be delivered. It was entirely owing to this default of its agent, whose bounden duty it was to deliver the policy, that it was not delivered and the premium paid when the applicant was in perfectly good health. It was the duty of the company to deliver the policy, and it was notified that the applicant was fully ready, willing, and able to pay the premium and receive the policy, and this duty it failed to perform, whereby damage has resulted to the beneficiary, and a cause and right of action has accrued to the plaintiff by reason of this neglect and default of the company through its agent. The company had the right to employ an agent to assist it in performing its duty, but it is responsible for his neglect, or default, and must answer over for it to those entitled to receive the money on the policy if it had been properly delivered and was in force at the time of the applicants' death.

*Respondeat superior* is the maxim which fixes this liability. It is a plain case of a default by the agent, rendering the principal answerable for the wrong.

ADAMS, J., concurring: On 1 June, 1921, William Adie English applied in writing to the defendant for a policy of insurance on his life in the sum of $3,000, payable to his estate, and agreed to pay therefor an annual premium of $84.33. His application contained these provisions: "I hereby agree that this application (parts 1 and 2) and the policy when issued, including a copy of this application annexed thereto, or endorsed thereon, shall constitute the entire contract between the parties hereto." And further: "That the policy hereto applied for shall not take effect unless and until it shall have been issued and delivered to me and the premiums thereon paid to the company or its authorized agent during my lifetime and in good health."

The application was received by the defendant at its home office in Chattanooga on 7 June, 1921, and was thereafter accepted; and on 15 June the policy of insurance was sent by the defendant to its general agent at Burnsville and by him to its local agent at Mars Hill. To

deliver the policy and to collect the premium was a part of the local agent's duties. The applicant "began to get sick" on 1 or 2 July, and died 14 July, 1921. The plaintiff testified: "Mr. Buckner (the local agent who had the policy for delivery) come to my house on 6 July, 1921, and fetched the policy over there, which I think to be this same one, and told me it was for William Adie English; and he says, 'I come to see you—some one has told me he is sick, and I have come to see you to know what we would do about this policy.' 'Well,' I says, 'Let's go up and see Adie; I don't think he is very sick.' He said, 'You go up and see Adie and get the money and I will go to Asheville and see what they say up there about it.' "

"Q. Did he say what he would do when he got to Asheville? A. He says, 'I will bring you back the policy this evening; I won't wait until morning. I will bring it back this evening.' Then he says, 'I ought to have delivered this policy some time ago. I have had this policy on hand something like two weeks or over.' And he says, 'I met William Adie English out on the John White Hill, hauling lumber, and he seemed to be in good health then, and I had a conversation with him about wanting to raise this policy from $3,000 to $5,000.' And he says, 'English says, "Yes, I told Dr. Baird to have you change my application from $3,000 to $5,000," ' and he says, 'I can't do it now, because your policy is done allowed and I have got your policy, and I can't do it now, but we will make another application on this same examination and I will get you the other two thousand dollars on it.' And William Adie English says, 'All right, let the one you have come ahead. Bring it on, I have got the money for you when you bring it.' "

He stated that the policy came two weeks before 6 July. He said he held up this policy on the ground that Mr. Hyder was getting up some in the same territory, and he wanted to make the visit with Mr. Hyder, and he was looking for others that he had got in, too, and he wanted to make the same delivery with Mr. Hyder."

There was additional evidence tending to show that the applicant was ready, able, and willing to pay the premium. By the terms of the application the premium was to be paid when the policy was delivered.

The plaintiff concedes that the contract of insurance was not to become effective until the policy was delivered and the premium collected, but he asserts that his cause of action does not arise from the breach of an executed contract of insurance, but from the defendant's wrongful failure to deliver the policy after the application had been accepted and the policy had been duly signed, issued, and forwarded for delivery, and after the applicant while in good health had demanded its delivery. It is said that this is the very thing against which the defendant contracted. I think not. The parties contracted that the insurance should be in

force when the policy was delivered and the premium paid; but surely this cannot be construed into an agreement that the defendant should be released from liability for negligently failing to do that which for value it had agreed to do. In my opinion the whole controversy should be determined by the contractual relation that existed between the parties after the policy had been received by the local agent and after the applicant had requested the agent to deliver it and had signified his readiness to pay the premium. What is the undisputed evidence as to this relation? (1) The intestate's application had been accepted and the policy had been placed in the hands of the defendant's local agent; (2) it was the local agent's duty to tender the policy and call for the premium; (3) the premium was to be paid when the policy was delivered; (4) while the policy was thus in the possession of the local agent, and while the applicant was in good health, he requested the agent to deliver the policy and was ready to pay the premium; (5) the local agent admitted, on 6 July, that he had held the policy for two weeks and "ought to have delivered it some time ago." In my judgment the result was this: The application was the intestate's promise to pay the premium when the policy was issued and tendered to the applicant, for the premium was to be paid "cash on delivery." The acceptance of the application and the sending of the policy to the local agent was an agreement by the defendant that the policy should be tendered in a reasonable time if the applicant was in good health. When the agent received the policy, and for two weeks afterwards, the applicant was in good health; he demanded the policy; he was ready to pay the premium; the defendant's agent negligently failed to deliver the policy at a time when he should have delivered it. This the agent admits. So the situation was this: In effect the applicant said to the defendant, "I will pay you an annual premium of $84.33 if you will insure my life while I am in good health." The defendant answered, "We accept your offer." The evidence, then, presents the case of an offer and acceptance, or a promise for a promise, which is a sufficient consideration to support an agreement. Anson defines consideration to be something done, forborne, or suffered, or promised to be done, forborne, or suffered by the promisee in respect of the promise. Under these circumstances neither party had a legal right to withdraw from the agreement, and either would be liable in damages for disregarding it and committing a breach. True, an offer unsupported by any consideration may be withdrawn at any time before acceptance, but when an offer is accepted on the terms in which it is made before a valid revocation, the agreement becomes instantly binding on the parties, and neither party can subsequently recede from the agreement without the consent of the other. It should be borne in mind just here that the local agent's duty was purely ministerial. The defendant

had signified its acceptance of the applicant's offer by issuing the policy, and had thereby bound itself to execute its part of the agreement. Also, it should be remembered that the intestate insisted upon the defendant's performance. If the defendant, when the demand was made, had positively refused to deliver the policy at any time, it would evidently have been liable to the intestate—the evidence showing that he was then in good health and ready and able to pay the premium; and none the less is the defendant liable if its agent unreasonably delayed to comply with the demand and abide by its agreement. The result is the same whether the action be considered as a suit to hold the defendant liable for damages caused by its agent's negligence or a suit to hold it to the liability it would have incurred if the agent had not been negligent.

It is insisted that the agent would have delivered the policy but for the applicant's sickness and death, and that there was no obligation resting upon him to deliver it at any particular time. The contract, it is true, specified no definite time within which the policy should be delivered, but the law imposed upon the defendant the duty to see that it was delivered in a reasonable time after the intestate demanded it. The local agent was not the agent of the applicant, but of the defendant by whom he was employed for the purpose of delivering policies and collecting premiums. The crucial point in the case is whether the intestate was wrongfully denied possession of the policy, and thereby deprived of insurance to which he was justly and legally entitled. If the agent had the right to postpone the delivery for two weeks, why not for two months, or for twelve, and in this way to abrogate the agreement? He admitted substantially that his carelessness defeated the insurance.

After considering the questions involved in the light of principles which in my judgment are sustained by the authorities, I am convinced that a new trial should be granted, and the jury permitted to find from the evidence whether the intestate, while in good health, requested the agent to deliver the policy, and whether he was ready, able, and willing at that time to pay the premium; and, if so, whether the agent, carelessly disregarding the applicant's rights, failed to deliver the policy within a reasonable time thereafter.

The defendant introduced no evidence. The motion to dismiss the action as in case of nonsuit was allowed. I have treated the questions presented as if the circumstances which the evidence tends to establish were formally admitted. Upon consideration of all the evidence which may be offered at the trial the jury may find the facts to be otherwise, but with these matters we are not concerned.

STACY, J., dissenting: The parties have deliberately contracted against the very contingency which has happened here. In the written application, signed by the plaintiff's intestate, appear the following stipulations:

1. "I ·hereby agree that this application (parts 1 and 2), and the policy, when issued, including a copy of this application annexed thereto, or endorsed thereon, shall constitute the entire contract between the parties hereto."

2. "That the policy hereby applied for shall not take effect unless and until it shall have been issued and delivered to me and the premium thereon paid to the company, or its authorized agent, during my lifetime and good health."

It is conceded that under this second provision no contract of insurance was ever effected. Plaintiff's intestate was never under any binding obligation to accept the insurance. He was at liberty to revoke his application and to reject the policy at any time prior to its delivery, or tender thereof. In my judgment, the plaintiff is not entitled to recover. *Ray v. Ins. Co.,* 126 N. C., 166. See, also, *Roe v. Ins. Asso.,* 17 L. R. A. (N. S.), 1144, and note; *National Union Fire Ins. Co. v. School District,* 122 Ark., 179; L. R. A., 1916 D, 238; *Meyer v. Central States Life Ins. Co.,* 103 Neb., 640; *Bradley, Admr., v. Fed. Life Ins. Co.,* 295 Ill., 381; 15 A. L. R., 1021.

The plaintiff's intestate elected to enter into this very kind of an agreement, and there is a well known distinction between obligations imposed by law and those created by express contract. Where the rights of the parties are fixed by agreement, the law will uphold such rights. *Clancy v. Overman,* 18 N. C., 402. Suppose it had been stipulated, in the present application, that the insurance applied for should not take effect until sixty days thereafter, and then only upon condition of the applicant's continued good health. Clearly the insurance company would have incurred no liability had the applicant died during the 60-day period. What is the difference between the supposed case and the case at bar? It was agreed that the policy should not take effect unless and until it was issued and delivered and the premium paid thereon during the lifetime and good health of the applicant. The condition upon which the contract of insurance was to take effect never occurred; hence, no insurance was ever effected. This much is conceded, but it is said that the policy could have been delivered before the applicant's sickness and death, and that it was the duty of the agent to do so. The defendant replies to this by saying that the agent would have delivered the policy but for the applicant's sickness and death, and that there was no obligation resting upon him to deliver it at any particular time. Both the applicant and the agent, with knowledge of the provisions of the contract, were simply waiting a convenient time for its delivery, when the applicant's sickness and death prevented the consummation of the contract. The defendant has breached no legal duty which it owed

to the plaintiff, and for which an action in tort may be maintained. See note, 9 Ann. Cas., p. 225.

I have examined every authority cited in the opinion of the Court, and many more, but I am unable to find any decision to sustain a recovery upon facts similar to those now before us. It will be observed that in those cases recognizing a right of recovery in an action of tort for negligent delay in passing upon the application, or failing for an unreasonable length of time to forward application with medical report for acceptance or rejection, an advance premium was paid by the applicant, or notes given therefor, and the insurance company was therefore under a legal obligation to act promptly and without any unreasonable delay. The applicant, after paying the first premium, had a right to rely upon the assurance that his application would be accepted or that he would be promptly notified in case of its rejection. But this is not our case. Plaintiff's intestate knew that the insurance was not to become effective until the policy was delivered and the premium paid by him. The very last case cited in the opinion of the Court, *Waters v. Annuity Co.,* 144 N. C., 663, calls attention to this distinction: "Accordingly, a binding acceptance can be, and frequently is, indicated by the mailing of a letter in due course containing an unconditional acceptance, or by sending a policy to an agent with instructions for unconditional delivery, *where there is no contravening stipulation in the contract itself.*" (Italics added.) Here there was a contravening stipulation in the contract.

And, speaking to the importance of this provision, in *Ray v. Ins. Co.,* 126 N. C., 169, *Faircloth, C. J.,* used the following language: "So we have an agreement with an important provision or condition attached, fixing an event on the happening of which the contract shall become operative. Of course, the minds of the contracting parties met as effectually on this provision as on any other part. This proposition was made by the applicant and accepted by the defendant. How is the applicant to escape the force of this provision? The proviso is not unreasonable. There is nothing in it illegal, nor does it contravene any feature of public policy. The proviso or condition is important to both parties. The applicant wants certainty and desires a certain day, when the agreement becomes absolute, and is stripped of all doubt. The defendant wants protection against unforeseen trouble that may arise after approval of the application and before delivery of the policy. A change of habits and impairment of health may intervene, and misrepresentations in the application may be discovered. These possibilities are understood by the parties, and they would make the subject unfit for insurance. Against these, the proviso affords protection; and to remove all doubt, it is provided that, until the policy is delivered, there is no

Fox *v.* Ins. Co.

insurance in force." To like effect is the decision in *Ross v. Ins. Co.,* 124 N. C., 395.

One further observation and I am done. The following is taken from the opinion of the Court: "The defendant had a form of receipt attached to its application for advance payment of premium, and it was stipulated therein that the insurance was effective from the date of the approval of the application from the defendant's medical director. The agent elected to waive the advance payment on the premium, and stated that the premium was to be paid on delivery of the policy. The defendant accepted the application and issued its policy with knowledge of the waiver and stipulation. That is, it agreed that the insurance was to be effective from the date of the approval of the application by its medical director, but that the premium need not be paid until the policy was delivered."

If this be the law, why isn't the plaintiff entitled to recover on the policy? The Court is here talking about a blank form of receipt that was never filled out. The applicant had the option and the election to make an advance payment of premium with the application so that the insurance would be effective from the date of approval of the application by the defendant's medical director, but this was not done in the instant case. Plaintiff's intestate elected not to make any advance payment of premium and elected not to apply for a policy effective from the date of approval of the application by the defendant's medical director, but he elected to make application for insurance with the provision that the premium was not to be paid until the policy was delivered and the premium paid by him during his lifetime and in good health. There certainly was no waiver of any payment of any premium by the agent of the company or by the company itself. The plaintiff's intestate elected not to make any advance payment as he had the option and the right to do, but he voluntarily chose and elected the other kind of insurance on which the premium was payable on delivery of the policy, and on which date the policy was to become effective.

I think the judgment of nonsuit should be upheld. The policy was never delivered; no premium was ever paid; it would be unjust and inequitable, under the facts and circumstances of this case, to permit a recovery against the insurance company.