LOWE'S NORTH WILKESBORO HARD-
WARE, INC., Plaintiff,

v.

The FIDELITY MUTUAL LIFE INSUR-
ANCE COMPANY, Defendant.

No. C-37-W-61.

United States District Court
M. D. North Carolina,
Wilkesboro Division.

May 26, 1962.

Jordan, Wright, Henson & Nichols, Greensboro, N. C., and McElwee & Hall, North Wilkesboro, N. C., for plaintiff.

Wharton, Ivey & Wharton, Greensboro, N. C., for defendant.

PREYER, District Judge.

The defendant moves for summary judgment on each of the three causes of action asserted by the plaintiff in its complaint. Plaintiff concedes that defendant's motion should be granted as to the first cause of action but resists the motion on the second and third causes of action. We are of the opinion that defendant's motion for summary judgment should be granted as to the second cause of action but denied as to the third cause of action.

SECOND CAUSE OF ACTION

This cause of action is in tort. Plaintiff alleges that it is entitled to recover of the defendant the sum of $200,000.00, and bases its right to recover on the alleged negligent failure of the defendant to act upon the application for a policy of insurance in the amount of $200,000.00 upon the life of Henry Carl Buchan, Jr., within a reasonable time. Part 1 of the Buchan application was received at the Home Office of the defendant Company on September 30, 1960. Part 2 of the Buchan application consisting of the reports of the medical examination of Buchan made by Dr. Robert L. McMillan, was received by the defendant on October 4, 1960, and a like report of the medical examination of Buchan made by Dr. David Cayer was received by the defendant on October 6, 1960. On October 3, 1960, defendant requested from Retail Credit Company an inspection re-

port on Buchan. At the time the Buchan application was received and considered, Arthur H. Evans was in charge of its Underwriting Department. P.A.D. Schuessler was Underwriting Officer of the defendant Company. Evans and Schuessler had full and complete authority to consider and act upon all applications for life insurance submitted to the defendant. Only Evans had final authority to act upon applications for insurance in the amount of $100,000.00 or more. The inspection report was received Friday, October 14, 1960. On Saturday, October 15, Evans had to leave Philadelphia on a field trip and was away from the Home Office of the defendant Company from October 15 until after October 19. Evans was traveling by automobile and Schuessler did not know where he could locate him.

Evans called Schuessler at approximately 9:15 on the morning of Wednesday, October 19, at which time Schuessler reviewed the entire file on Buchan with him. They agreed that the Buchan application for $200,000.00 should be declined, but decided to offer a $50,000.00 policy upon the life of Buchan at standard rates. A policy in the amount of $50,000.00 was prepared on the life of Buchan on October 19, 1960, and was sent down to the defendant's Washington, D. C., agency for delivery. Buchan died on October 22.

The defendant contends that the alleged negligent delay occurred in the State of Pennsylvania, where the home office of defendant is located, and that therefore the law of Pennsylvania controls under the North Carolina choice-of-law rules. Defendant further asserts that negligent delay in acting upon an application for life insurance is not actionable under the laws of Pennsylvania, and that therefore defendant is entitled to summary judgment in its favor on this cause of action. We think defendant's position is well-taken.

■■ The jurisdiction of the Court in this case depends upon diversity of citizenship. Under the decision of Klaxon Company v. Stentor Electric Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), this Court must follow the conflict of law rules prevailing in the State of North Carolina. North Carolina holds that the law of the place of the tort controls. The North Carolina Conflict of Law Rule applicable in actions in tort is stated in Howard v. Howard, 200 N.C. 574, 158 S.E. 101 (1931), as follows:

"The suit is in tort, the accident occurred in New Jersey, and the defendant has pleaded the laws of that state in bar of recovery.

"The actionable quality of the defendant's conduct in inflicting injury upon the plaintiff must be determined by the law of the place where the injury was done; that is, the measure of the defendant's duty and his liability for negligence must be determined by the law of New Jersey * * * If an act does not give rise to a cause of action where it is committed the general rule is that the party who commits the act will not be liable elsewhere, and in such event it is immaterial that a cause of action would have arisen if the wrong had been done in the jurisdiction of the forum."

If there was any negligence in the handling of the Buchan application, the place where the negligence occurred was in the Home Office of the defendant Company in Philadelphia, Pennsylvania. Therefore, the law of the State of Pennsylvania controls as to the defendant's liability in tort for alleged negligent delay in passing upon the application.

We think the case of Killpack v. National Old Line Insurance Co., 10 Cir. (1956) 229 F.2d 851 (854), is in point. This is an action which was instituted in the United States District Court for the District of Utah by Ardis Gadd Killpack, executrix of the estate of her deceased husband, against National Old Line Insurance Company, an Arkansas corporation with its Home Office in the State of Arkansas. In addition to plaintiff's claim that there was a valid contract of insurance, she also claimed that the de-

fendant Company was liable in tort for negligent failure to act upon her deceased husband's application for insurance within a reasonable time. The Court held that the law of Arkansas, the location of the defendant's Home Office, controlled, stating:

"With respect to appellant's second contention, that appellee is liable in tort, the law of Arkansas, the location of appellee's home office, controls.

"While we agree with the trial court's finding that appellee ' * * * acted with reasonable diligence in the handling and processing of both said applications', we consider this point moot, because Arkansas, together with a number of other states, has rejected the theory of tort liability in cases of this sort."

The Court cited, in support of its position, Restatement of Conflict of Laws, Sections 377–380, 383; Beale, Conflict of Laws, Section 379.1; Vrooman v. Beech Aircraft Corp., 10 Cir., 183 F.2d 479.

The plaintiff asserts that in deciding what law should apply in an action where an act of negligence occurs in one State and results in an injury in another, the court is faced with a problem of adjudication and not automation. It argues that the forum court should make its choice on the basis of analysis of the interests possessed by the state involved rather than by the application of mechanical formulae of the conflicts of law. Richards v. United States of America, 369 U.S. 1, 82 S.Ct. 585, 7 L.Ed.2d 492 (1962). Plaintiff points out that the contacts of North Carolina with the cause of action are far more significant than Pennsylvania's. The insurance applied for was incidental to a general plan developed in North Carolina providing security for a loan as part of an expansion program of the plaintiff North Carolina corporation, the named insured and

the beneficiary corporation both being residents of North Carolina. Plaintiff would also consider the public policy of North Carolina as a factor entitled to weight and cites North Carolina General Statutes, Section 58–28,[1] which provides that all contracts of insurance on lives in North Carolina shall be subject to the law of North Carolina and all applications for such insurance shall be deemed solicited in North Carolina.

It is clear that the Supreme Court in the recent Richards case was dealing only with the question of the *power* of a State court to adopt an appropriate conflict-of-laws doctrine and was not requiring the adoption of the "significant contacts" test. The Supreme Court stated, in fact, that "The general conflict-of-laws rule, followed by a vast majority of the States, is to apply the law of the place of injury to the substantive rights of the parties." (The Court in a footnote cites California, Minnesota, Wisconsin, Connecticut and Mississippi as states adopting the "significant contacts" doctrine.) We think it clear that the North Carolina courts have followed the more traditional conflict-of-law rule, and that such rule is binding on this court. Also, the interests of public policy in this case are not such as to cause the North Carolina courts to disregard its ordinary conflict-of-law rules. In Howard v. Howard, supra, the North Carolina court said:

" * * * the fact that the law of two states may differ does not necessarily imply that the law of one state violates the public policy of the other. 'It by no means follows that because the statute of one state differs from the law of another state, therefore it would be held contrary to the policy of the laws of the latter state * * * To justify a court in refusing to enforce a right of action which accrued under the law of another state, because against the poli-

1. "§ 58–28. State law governs insurance contracts.—All contracts of insurance on property, lives, or interests in this State shall be deemed to be made therein, and all contracts of insurance the applications

for which are taken within the State shall be deemed to have been made within this State and are subject to the laws thereof."

cy of our laws, *it must appear that it is against good morals or natural justice, or that for some other such reason the enforcement of it would be prejudicial to the general interests of our own citizens.'* Herrick v. R. Co., 31 Minn. 11, 16 N.W. 413, 414, 47 Am.Rep. 771; Goodrich on Conflict of Laws, 199." Howard v. Howard, supra.

The North Carolina court lists examples of such policy situations as "prohibited marriages, wagers, lotteries, racing, contracts for gaming or the sale of liquor, and others." Further, we think this result harmonizes with North Carolina General Statutes, Section 58–28, which provides that all contracts of insurance on lives in North Carolina shall be subject to the law of North Carolina, in that this would seem to mean the *whole* law of North Carolina, including choice-of-law rules.

■ We hold, therefore, that the Pennsylvania law applies. We further find that negligent delay in acting upon an application for life insurance is not actionable under Pennsylvania law. We think the Pennsylvania law in this regard is settled in the case of Zayc v. John Hancock Mutual Life Insurance Co., 338 Pa. 426, 13 A.2d 34 (1940). The law, as declared in the Zayc case, has been followed by the United States District Court for the Western District of Pennsylvania in Shipley et al. v. The Ohio National Life Insurance Co., (D.C., 1961) 199 F. Supp. 782 (We are advised that this case was affirmed by the United States Court of Appeals for the Third Circuit on December 8, 1961, 296 F.2d 728). In Shipley, the court granted defendant's motion for summary judgment, stating:

"Pennsylvania law is clear that a life insurance company cannot be held liable in tort for the manner in which it handles an application for life insurance. Zayc v. John Hancock Mutual Life Insurance Company, 338 Pa. 426, 13 A.2d 34 (1940). Since the company is under no duty to insure any applicant, it therefore cannot be held to any standard of care in processing an application."

Defendant's motion for summary judgment on plaintiff's second cause of action is therefore granted.

■ Defendant advances an alternative ground for its motion for summary judgment, submitting that even if North Carolina law rather than Pennsylvania law applied, the undisputed facts show that there was no undue delay. Although the point is moot in view of the ruling outlined above, this court, in the interest of avoiding unnecessary appeals, will pass upon it. Should the Circuit Court find that this court is in error in applying the Pennsylvania law, and if the Circuit Court should find that North Carolina law controls the question of whether or not there is a cause of action against defendant for negligent delay in passing upon the application, then we hold: 1) that under North Carolina law the plaintiff has a cause of action against defendant for the tort of negligent delay in passing upon the application of insurance, Fox v. Volunteer State Life Insurance Company, 185 N.C. 121, 116 S.E. 266 (1923), later App. 186 N.C. 763, 119 S.E. 172 (1923); and 2), that the question of whether or not there was negligent delay cannot properly be determined on the motion for summary judgment because it involves the determination of ultimate facts, and that in this event defendant's motion for summary judgment should be denied.

## THIRD CAUSE OF ACTION

■ The plaintiff's third cause of action is in contract. It asserts that the defendant issued a policy in the amount of $50,000.00 on the life of Henry Carl Buchan, Jr. and that this policy was accepted by the plaintiff's agent. The defendant contends that the $50,000.00 policy was issued upon a $200,000.00 application and that it therefore amounted to a counter offer which was never effectively accepted by plaintiff. The defendants also contend that even if there was a valid contract of insurance, the policy was never in force and effect be-

cause it was never delivered to Buchan or to the plaintiff.

The material facts indicate that on October 19, 1960, the defendant declined to accept the Buchan application for $200,000.00 of insurance as applied for, but did offer its policy in the face amount of $50,000.00, dated October 19, 1960, with the plaintiff, Lowe's North Wilkesboro Hardware, Inc., named as primary beneficiary therein. On the same day the defendant's Underwriting Officer, Schuessler, wrote a letter to the Company's agent, Hatzes, in Washington, D.C., enclosing the policy and an amendment to the Buchan application, with instructions to the agent that the policy was not to be delivered until the amendment to the application should be signed by Buchan, the proposed insured, and by the plaintiff, the applicant. The policy was received by defendant's agent, Hatzes, on the morning of October 20, 1960. Hatzes immediately called Burwell, the broker representing Buchan and his companies, and advised him that the defendant had limited the insurance to $50,000.00; whereupon Burwell told Hatzes that he was Buchan's agent and that he would "take the $50,000.00" policy and requested Hatzes to try for more. There was no mention of any amendment to the application in the conversation. The amendment to the Buchan application, amending the application from one for $200,000.00 to one for $50,000.00, was never signed by the proposed insured, Buchan, or by the plaintiff, the applicant.

Earlier, the plaintiff had sent to the defendant a check in the amount of $6,650.00 as an advance payment of the first annual premium on a policy of insurance in the amount of $200,000.00. This check was received by the defendant on Monday, October 17, 1960, and was deposited in defendant's suspense account. On October 24, 1960, the defendant received notice of Buchan's death and on the next day this check was returned to the defendant.

On these facts, defendant contends that there was no "meeting of the minds" and, thus, no contract between the parties. Both parties have briefed extensively the questions of law involved. We do not discuss these, however, because we think the evidence and its reasonable inferences present an issue of fact as to whether the minds of the parties met, and that this is not an issue to be resolved upon a motion for summary judgment.

"The motion for summary judgment * * * has an important place in providing a prompt disposition of *cases which have no possible merit* and in preventing undue delays * * *; but it should be *granted only where it is perfectly clear that no issue of fact is involved* and inquiry into the facts is not desirable to clarify the application of the law. (Citations omitted). And this is true even where there is no dispute as to the evidentiary facts in the case but only *as to the conclusions to be drawn therefrom* (numerous citations omitted)." (Emphasis added.) Stevens v. Howard D. Johnson, 4 Cir., 1950, 181 F.2d 390.

Assuming arguendo that there is no dispute as to the evidentiary facts, there is substantial dispute as to the conclusions to be drawn from the facts; e. g. the question of the extent of the authority granted to Burwell in Buchan's letter of September 3, 1960, to him, and the interpretation of the letter to the general agent accompanying the $50,000.00 policy.

We think these same considerations apply to defendant's contention that they are entitled to summary judgment because all the evidence indicates that there was no effective delivery of the policy. Delivery depends chiefly upon intention and constructive delivery is sufficient, in the absence of policy provisions to the contrary. "Where the insurer mails the policy to its agent, the intent with which this act is performed governs in determining the sufficiency of delivery." 1 Appleman, Insurance Law and Practice, § 132; Life and Casualty Insurance Co.

432

of Tenn. v. Gurley, 4 Cir., 1956, 229 F.2d 326. The determination of the intention of the parties requires developing all of the surrounding circumstances. This can not be done on a motion for summary judgment.

Defendant's motion for summary judgment on the Third Cause of Action is therefore denied.